**Jimmie Lee ALLEN, Jeffrey Davis, Gary Vann, Leroy William, on behalf of themselves and a class constituting of all similarly situated individuals, Plaintiffs–Appellants,**

**Albert Woods, Jonathan Cureton, on Behalf of Themselves and A Class Constituting of all Similarly Situated Individuals, Plaintiffs,**

**v.**

**Mario M. CUOMO, Governor of the State of New York, Robert Abrams, Attorney General of the State of New York, Thomas A. Coughlin III, Commissioner of New York State Department of Correctional Services, Charles J. Scully, Superintendent of Green Haven Correctional Facility, Wallace Oldham, Deputy**

Superintendent of Security Services of Green Haven Correctional Services, Jointly, Severally and Individually, Respectively, Patrick J. Bulgaro; Cyril Coefield, Captain, Christopher Artuz, Defendants–Appellees.

Nos. 324, 325, Dockets 96–2255, 96–2257.

United States Court of Appeals, Second Circuit.

Argued Aug. 26, 1996.

Decided Nov. 7, 1996.

Joseph W. Rand, New York City (Robert N. Shwartz, Debevoise & Plimpton, of counsel), for Plaintiffs–Appellants.

Barbara K. Hathaway, Assistant Attorney General, State of New York, New York City (Dennis C. Vacco, Attorney General of the State of New York, Thomas D. Hughes, Assistant Solicitor General, State of New York, of counsel), for Defendants–Appellees.

Before: MESKILL and KEARSE, Circuit Judges.[*]

MESKILL, Circuit Judge:

Plaintiffs, who are inmates of New York State's Green Haven Correctional Facility (Green Haven), brought this action pursuant to 42 U.S.C. § 1983 challenging the constitutionality of two changes in the regulations of the Department of Correctional Services (DOCS) pertaining to a mandatory five dollar disciplinary surcharge imposed on inmates found guilty of violating certain prison rules and a one time three week pay lag of inmate wages. The United States District Court for the Southern District of New York, Kram, J., adopted the Report and Recommendation of United States Magistrate Judge Katz and granted defendants-appellees' motion for summary judgment, dismissing the action. *Rudolph v. Cuomo*, 916 F.Supp. 1308 (S.D.N.Y.1996). The inmates contend that the mandatory surcharge is unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution because it violates (1) the inmates' procedural due process rights to an unbiased adjudicator, (2) their substantive due process rights in that it was enacted without express statutory authorization, and (3) the Equal Protection Clause due to the absence of an express hardship waiver for indigent inmates, where waivers are available for other mandatory surcharges. With regard to the pay lag, the inmates contend that it violates (1) their due

---

[*] The Honorable J. Daniel Mahoney, who was a member of the panel, died on October 23, 1996, and the appeal is being decided by the remaining two members of the panel, who are in agreement. *See* Local Rule § 0.14(b).

process rights because they have a property interest in the timely payment of wages, (2) the Takings Clause because there is no just compensation for the deprivation of a vested property right, and (3) the Contracts Clause because the state has substantially interfered with the implied contractual relationship between the inmates and the DOCS. Finding no merit in any of the contentions, we affirm.

## BACKGROUND

### I. *The Disciplinary Surcharge*

Disciplinary matters in the New York state correctional system are handled in the following manner. New York DOCS employees issue misbehavior reports to any inmate alleged to have violated prison rules and regulations. A report is forwarded to a reviewing supervisor and the charge is either dismissed or designated as a Tier I, Tier II or Tier III violation. The tier level is determined by several factors, such as the frequency of the inmate's misbehavior and the severity of the conduct. Tier I violations, which are the least severe, are subject to adjudication by a prison sergeant. Tier II hearings are presided over by a lieutenant and Tier III hearings are adjudicated by either a captain, deputy superintendent, senior counselor, steward or education director. DOCS employees having prior involvement in the incident are barred from serving as hearing officers. Inmates found guilty of Tier II or III violations are entitled to judicial review in state court through a proceeding under N.Y. C.P.L.R. 7801 *et seq.* (McKinney 1994 & Supp.1996).

In December 1991, Thomas A. Coughlin III, Commissioner of DOCS, promulgated an amendment to N.Y. Comp.Codes R. & Regs. tit. VII, §§ 253.7, 254.7 requiring inmates convicted at Tier II and III hearings to pay a five dollar disciplinary surcharge. Funds collected from the surcharge are deposited in the state general fund and not specifically allocated to the DOCS budget.

The policy was promulgated about the time that New York was experiencing severe budgetary problems. Between October 1990 and October 1991, over 1,400 DOCS employees were laid off. Green Haven's staff was reduced by over 100 employees during this period. Several statements attributed to Commissioner Coughlin and DOCS spokesman James Flateau appeared in various newspapers and other publications linking the policy changes to the DOCS budget cuts. One article, although not directly quoting Flateau, stated that the DOCS plan, which included several other revenue-raising policy changes as well, would save enough money to prevent laying off as many as 70 correction officers. The inmates contend, *inter alia,* that because of the linking in the press of the surcharge to preventing further layoffs, DOCS employees at all levels of the disciplinary process have an improper pecuniary and personal incentive to issue more Tier II and III reports and guilty verdicts, thus introducing bias into the disciplinary system.

### II. *The Three Week Pay Lag*

All able bodied inmates at Green Haven are required to accept work assignments during their period of incarceration. Inmates may request a particular assignment which may or may not be granted. Since the turn of the century, the State of New York has compensated inmates for work performed. *See generally* N.Y. Correct. Law § 187 (McKinney 1987 & Supp.1996). The rate of compensation ranges from sixty cents per day to two dollars per day, depending on the particular assignment. Inmates' earnings are placed in a prison account and may be withdrawn for purposes such as sending money home to family members, making purchases from the prison commissary or outside vendors, and paying for organizational memberships. Inmates also use their compensation to obtain photocopies and tapes of disciplinary hearing transcripts. The commissioner has discretion to control when an inmate may have access to wages during imprisonment or to hold an inmate's earnings in trust until release. *See* N.Y. Correct. Law §§ 187(3), 189(1) (McKinney 1987 & Supp. 1996).

Effective January 1, 1992, twenty percent of inmates' weekly wages was withheld over a period of fifteen weeks until a full three weeks' pay was withheld. This new policy provides that the "lagged" wages will be paid

to inmates upon their release from DOCS custody.

### III. *Proceedings Below*

In 1992 and 1993, a number of actions were filed in the United States District Court for the Southern District of New York pursuant to 42 U.S.C. § 1983, challenging the constitutionality of the two policies. On May 10, 1993, four actions were consolidated and certified as a class action pursuant to Fed. R.Civ.P. 23(b)(2). The class includes all inmates incarcerated at Green Haven Correctional Facility from January 1, 1992 through the present, who were subject to either of the two policies. At the close of discovery, inmates moved for summary judgment, seeking both declaratory relief and restoration of money withheld under the regulations. Defendants filed a cross-motion for summary judgment. The case was referred to Magistrate Judge Katz for pretrial supervision and reports and recommendations on substantive motions, in accordance with 28 U.S.C. § 636(b)(1)(B).

On May 23, 1995, Magistrate Judge Katz issued a report recommending that the inmates' motion for summary judgment be denied and defendants' motion for summary judgment be granted and the inmates' action be dismissed in its entirety. *See Rudolph v. Cuomo*, 916 F.Supp. 1308 (S.D.N.Y.1996) (opinion of Kram, *J.*, adopting the report). With respect to the mandatory surcharge, the magistrate judge concluded there was no due process violation or bias in the disciplinary system. The report stated that inmates are afforded procedural protection under state law, including judicial review, and that no evidence was presented to show that any hearing officer believed that finding an inmate guilty would help save DOCS jobs. The magistrate judge next rejected the claim that there is no statutory authority for the surcharge, noting that the scope of authority of a state agency is a question of state law not within the district court's jurisdiction. Finally, the equal protection claim was rejected because inmates are not similarly situated to those entitled to hardship waivers for other surcharges under state law. The magistrate judge also found the surcharge rationally related to a legitimate penological interest.

Turning to the pay lag policy, the magistrate judge concluded that inmates have a property interest in their wages earned but not in the prompt payment of such. The Takings Clause and Contracts Clause claims were rejected because inmates have no investment-backed expectation in prompt payment of wages nor does any contract providing for prompt payment exist.

The inmates filed timely objections to the magistrate judge's report but the district court adopted the report by opinion and order dated February 21, 1996 and judgment was entered dismissing the case. This appeal followed.

### DISCUSSION

■ We review the grant of summary judgment *de novo*. *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996). A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case. *Id.* at 247–48, 106 S.Ct. at 2509–10.

### I. *The Disciplinary Surcharge*

#### A. *Due Process Claim*

■ The inmates claim that the mandatory surcharge violates their due process right to an impartial adjudicator by creating incentives for those involved in the prison disciplinary system to charge and convict inmates of Tier II and III violations in order to raise revenues and prevent further layoffs of DOCS employees. Inmates cite to several newspaper articles and public statements by DOCS officials creating the perception that the disciplinary surcharge will directly benefit the prison system. Inmates argue that if

prison employees are aware or even perceive that collecting the surcharge will generate revenue for DOCS and prevent layoffs, then the inmates are denied their right to neutral unbiased adjudicators in disciplinary proceedings.

█ An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 570–71, 94 S.Ct. 2963, 2981–82, 41 L.Ed.2d 935 (1974); *Russell v. Selsky,* 35 F.3d 55, 59 (2d Cir.1994) (citing *McKinnon v. Patterson,* 568 F.2d 930, 934 n. 3 (2d Cir. 1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)); *Patterson v. Coughlin,* 905 F.2d 564, 569–70 (2d Cir.1990) ("[A]n impartial decisionmaker is one who, *inter alia,* does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen."). However, the independent hearing officer need not come from outside the prison. *See Vitek v. Jones,* 445 U.S. 480, 496, 100 S.Ct. 1254, 1265, 63 L.Ed.2d 552 (1980); *Powell v. Ward,* 542 F.2d 101, 103 (2d Cir.1976).

█ The requirements imposed by the Due Process Clause are "flexible and variable dependent upon the particular situation being examined." *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983), *modified on other grounds, Sandin v. Conner,* —— U.S. ——, —— ——, 115 S.Ct. 2293, 2298–2300, 132 L.Ed.2d 418 (1995). The degree of impartiality required of prison officials does not rise to the level of that required of judges generally. It is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts. *Russell,* 35 F.3d at 60; *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). *Cf. Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774–75, 86 L.Ed.2d 356 (1985) ("requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke good time credits") (emphasis added).

There is no dispute that the surcharge was implemented, at least in part, to help balance the state's budget and to defray the costs of the disciplinary process. It was reasoned that inmates, like all New Yorkers, should

play some role in reducing the deficit. However, the funds collected from the disciplinary surcharge are deposited in the state's general fund and do not benefit DOCS directly. We agree with the conclusion reached below that any incentive to find an inmate guilty or to upgrade the violation that might result from the surcharge is too remote and attenuated to deprive the inmates of due process.

The inmates argue that the relevant inquiry is not where the surcharge revenues are actually deposited but whether DOCS employees believe that the surcharge assessments would help them keep their jobs. However, the inmates made no showing that a single hearing officer was under the impression there would be any personal gain from charging or convicting an inmate of a Tier II or III violation. They primarily rely on several newspaper articles and public statements by DOCS officials suggesting the revenue generated from the new policy would directly benefit the DOCS budget. We find this evidence too speculative to raise an inference of improper bias.

█ Statistics offered by the inmates also do not support their case. Although the total number of Tier II and III hearings increased by 2.99 percent from 1991 to 1992, guilty verdicts actually decreased by 0.44 percent, and the decrease continued in 1993. There were no DOCS layoffs in 1992 or 1993 nor were any further layoffs contemplated. Administrators serving as adjudicators are presumed to be unbiased. *Wolkenstein v. Reville,* 694 F.2d 35, 41 (2d Cir.1982), *cert. denied,* 462 U.S. 1105, 103 S.Ct. 2452, 77 L.Ed.2d 1332 (1983). That presumption has not been rebutted here.

Plaintiffs' reliance on *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), and *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), to support the proposition that the mere possibility of institutional bias is enough to violate due process is misplaced. In *Gibson,* the adjudicatory board who decided charges of professional misconduct against fellow private optometrists could benefit personally from the reduced competition if a competitor was en-

joined from practicing. In *Tumey*, a town mayor who levied fines was permitted to personally retain the fines he assessed. The financial interests of the adjudicators involved in those cases were direct and significant, unlike the interest of the Green Haven prison officials here. *See Dugan v. Ohio*, 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928). Finally, inmates subject to Tier II or III disciplinary action have the right to seek judicial review in state court of any conviction through a proceeding under N.Y. C.P.L.R. 7801 *et seq.* (McKinney 1994 & Supp.1996).

■ Because money from the surcharge is placed in the state's general fund and not directly in the DOCS budget and no showing was made from which a reasonable jury could infer improper bias by DOCS employees, the inmates have failed to meet their burden of establishing a material factual dispute concerning bias in the Green Haven disciplinary system. As we noted in *Francis v. Coughlin*, the bare assertion of claims of bias and prejudgment, merely because they implicate issues involving the defendant's state of mind, should not preclude summary disposition of a case. 891 F.2d at 47.

■ Appellants next argue that the surcharge violates due process because it constitutes a forfeiture without proper statutory authority. The scope of authority of a state agency is a question of state law and not within the jurisdiction of federal courts. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 117, 104 S.Ct. 900, 917, 79 L.Ed.2d 67 (1984). The Eleventh Amendment bars federal suits against state officials on the basis of state law. *See id.; Young v. New York City Transit Authority*, 903 F.2d 146, 164 (2d Cir.), *cert. denied*, 498 U.S. 984,

111 S.Ct. 516, 112 L.Ed.2d 528 (1990). There is no "greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Young*, 903 F.2d at 164 (quoting *Pennhurst*, 465 U.S. at 106, 104 S.Ct. at 911). This applies to state law claims brought into federal court under pendent jurisdiction as well. The New York courts have already examined the surcharge and found that N.Y. Correct. Law §§ 112, 137 give the Commissioner of DOCS broad discretion in the implementation of policies relating to fiscal control and management of correctional facilities and to security and inmate discipline. The surcharge was held to be a legitimate exercise of the Commissioner's authority. *See Allah v. Coughlin*, 190 A.D.2d 233, 599 N.Y.S.2d 651 (3rd Dep't), *appeal denied*, 82 N.Y.2d 659, 605 N.Y.S.2d 5, 625 N.E.2d 590 (1993). In the interest of Federalism and as a matter of comity, we will not consider this claim.

## B. *Equal Protection Claim*

■ The inmates also argue that the surcharge violates the Equal Protection Clause because it does not explicitly contain a hardship waiver for indigent inmates, while other mandatory surcharges imposed by the State of New York provide such a waiver.[1] The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Inmates are not similarly situated to unincarcerated persons subject to other surcharges. *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The rights of prisoners are necessar-

---

1. We note that inmates are not a suspect class nor do they allege that indigent inmates were treated differently than the rest of the prison population. In fact, the pay lag applies to all inmates equally. To prove an equal protection violation, claimants must prove purposeful discrimination. *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995). The magistrate judge found as an initial matter that plaintiffs have not alleged that a single member of the class ever requested a waiver of the surcharge because of indigence, and defendants have stated that in such a case, they might grant a waiver.

The magistrate judge also found that N.Y. Comp.Codes R. & Regs. tit. VII, §§ 253.9, 254.9 on their faces may provide for the possibility of a waiver. These sections read in pertinent part: "At any time during which a penalty imposed pursuant to a disciplinary [superintendent's] hearing is in effect, the superintendent may reduce the penalty." The district court found that there was a dispute as to the scope of the term penalty and therefore held that the provisions *standing alone* were insufficient ground for summary judgment.

ily limited because of their incarceration, not to mention that all their essential needs, such as food, shelter, clothing and medical care are provided by the state. A state may treat differently situated people in a different way. *See Schweiker v. Hogan,* 457 U.S. 569, 590, 102 S.Ct. 2597, 2609–10, 73 L.Ed.2d 227 (1982).

The Supreme Court has created a lower level of scrutiny in determining the constitutionality of prison rules. *See Turner v. Safley,* 482 U.S. 78, 81, 107 S.Ct. 2254, 2257, 96 L.Ed.2d 64 (1987); *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.), *cert. denied,* 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990). A rule need only be reasonably related to a legitimate penological interest. *Benjamin,* 905 F.2d at 575. Defendants state that the interests enhanced by the surcharge are deterring inmate misbehavior and raising revenues. We agree with the district court that these are legitimate interests that pass constitutional muster. *See Danneskjold v. Hausrath,* 82 F.3d 37, 43 (2d Cir.1996) (forcing prisoners to perform services for institution without paying them minimum wage is a legitimate method of seeing that they bear a cost of their incarceration). The equal protection claim has no merit.

## II. *The Three Week Pay Lag*

### A. *Due Process Claim*

The inmates contend the pay lag policy deprives them of their property right in the prompt payment of wages without due process of law. Defendants allege that inmates have no right to a job or to be paid for their labor, and therefore have no property interest in wages at all. The district court properly held that the inmates have a property interest in payment for their labor but no entitlement to timely payment of such wages.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have

more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Section 187 of N.Y. Correct. Law, which provides for the payment of wages based on work performed, and DOCS' longstanding policy of paying inmates for their labor creates an entitlement to these earnings. However, the crux of the inmates' argument is that this property interest includes the right to be paid biweekly or in some other timely fashion. This argument must fail.

"In considering state law, we focus initially on the relevant statute, regulation, or contract establishing eligibility for the government benefit at issue." *Plaza Health Labs. v. Perales,* 878 F.2d 577, 581 (2d Cir.1989). N.Y. Correct. Law § 187 gives DOCS broad discretion in establishing a system for compensation. Subsection 187(3) explicitly allows the option of holding inmate earnings in trust until release.[2] Subsection 189(1) provides that an inmate may withdraw from his prison account only upon approval by the commissioner. DOCS' past practice of paying wages biweekly does not create an entitlement to that timing. "A constitutional entitlement cannot 'be created ... merely because a wholly and expressly discretionary state privilege has been granted generously in the past.'" *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 465, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) (quoting *Leis v. Flynt,* 439 U.S. 438, 444 n. 5, 99 S.Ct. 698, 701 n. 5, 58 L.Ed.2d 717 (1979)) (emphasis omitted). Without statutory or contractual authority, there is no property interest in prompt payment. *See Christ Gatzonis Elec. Contractor v. New York City School Constr. Auth.,* 23 F.3d 636

---

**2.** *See also* N.Y. Correct. Law § 125(2) which requires that the DOCS commissioner "shall take such steps as are necessary to ensure that inmates have at least forty dollars available upon

release." The pay lag policy ensures that the required funds are available when leaving Green Haven.

(2d Cir.1994); *S & D Maintenance Co. v. Goldin,* 844 F.2d 962 (2d Cir.1988). It is clear that New York has not created an entitlement in access to wages prior to release and therefore, there is no due process violation.

### B. *Takings Clause Claim*

 Appellants claim that the pay lag policy violates the Takings Clause of the Fifth Amendment. It is argued that by withholding earned wages for years interest-free, the state is depriving inmates of their private property for public use without just compensation. *See Webb's Fabulous Pharmacies v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980). The Supreme Court has set out the factors to be considered in determining whether a governmental action has gone "beyond regulation and effects a taking." They include "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations." *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1005, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984) (quoting *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 83, 100 S.Ct. 2035, 2041–42, 64 L.Ed.2d 741 (1980)); *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). The district court properly focused on the third factor in disposing of the takings claim.

The inmates cannot establish a reasonable investment-backed expectation that DOCS will pay their wages biweekly simply because it had done so in the past. As discussed above, when the policy was promulgated, the inmates were on notice, pursuant to sections 187(3) and 189(1) of N.Y. Correct. Law, that DOCS could withhold their wages until release. *See Ruckelshaus,* 467 U.S. at 1006, 104 S.Ct. at 2874. The purpose of the investment-backed expectation requirement is to limit recovery to owners "who could demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime." *Loveladies Harbor v. United States,* 28 F.3d 1171, 1177 (Fed.Cir.1994); *see also Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 226–27, 106 S.Ct. 1018, 1027, 89 L.Ed.2d 166 (1986).

Although we need go no further in our analysis, we note that the economic impact of the pay lag is slight. For the fifteen weeks that their pay is lagged, inmates continue to receive eighty percent of their wages. While the inmates claim that the impact is severe because funds are necessary to satisfy a multitude of personal needs, all basic necessities for survival, such as food, clothing, shelter and medical care are already provided by the state.

### C. *Contracts Clause Claim*

 The inmates' final contention is that the pay lag violates the Contracts Clause of Article I, Section 10 of the Constitution by substantially interfering with an existing implied contract between the inmates and DOCS. To sustain a claim under the Contracts Clause, plaintiffs must show that the change in state law operates as a substantial impairment of a contractual relationship. *General Motors Corp. v. Romein,* 503 U.S. 181, 186, 112 S.Ct. 1105, 1109, 117 L.Ed.2d 328 (1992). This inquiry has three factors: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Id.* The inmates have failed to establish that a contractual relationship exists, thus we need look no further to dismiss this claim.

The Green Haven Orientation Handbook states that all able bodied inmates must either accept one of three work assignments or be recommended for transfer to another facility. The forms signed by inmates consenting to work assignments contain no details about how or when payments will be made. The payment practice can hardly be considered a contractual relationship. Furthermore, inmates are required to work by virtue of their incarceration.

 Even if a contractual relationship were established, "timely payment" of wages should not be included as an implied term. Once again, DOCS has express broad discretion as to how and when wages will be paid.

Accordingly, we affirm the district court's dismissal of the Contacts Clause claim.

## CONCLUSION

We have considered all of the arguments advanced by the Green Haven inmates in support of their appeal and hold them to be without merit. The judgment of the district court granting summary judgment in favor of the defendants and dismissing the action in its entirety is affirmed.

