114 F.3d 17
 Jason B. NICHOLAS, Plaintiff-Appellant,
v.
Edward TUCKER, Deputy Superintendent for Programs,
Woodbourne Correctional Facility; Clayton Cook, Corrections
Officer, Woodbourne Correctional Facility; Tammi Malone,
Keyboard Specialist, Woodbourne Correctional Facility; New
York State Department Of Correctional Services; Beatty,
Lieutenant, Woodbourne Correctional Facility; Julkerski,
Sergeant, Woodbourne Correctional Facility; Donald Selsky,
Director, Special Housing Unit/Inmate Disciplinary Program,
New York State Department of Correctional Facility,
Defendants-Appellees.
Jason B. NICHOLAS, on behalf of all others similarly
situated, Plaintiff-Appellant,
v.
T.J. MILLER, Acting Superintendent/Deputy Superintendent for
Programs, Woodbourne Correctional Facility; Robert
Hanslmaier, Superintendent, Woodbourne Correctional
Facility, New York State Department of Correctional
Services, Defendants-Appellees.
 Nos. 1448, 1693, Dockets 96-2470, 96-2528.
 United States Court of Appeals,
Second Circuit.
 Argued April 9, 1997.
Decided May 27, 1997.
 
 Gordon Schnell, New York City (Douglas F. Broder, Coudert Brothers, New York City, of counsel), for Plaintiff-Appellant.
 Martin A. Hotvet, Assistant Attorney General, Albany, New York (Dennis C. Vacco, Attorney General of the State of New York, Peter G. Crary, Assistant Attorney General, Albany, New York, of counsel), for Defendants-Appellees.
 Steven M. Haber, Assistant U.S. Attorney, New York City (Mary Jo White, U.S. Attorney for the Southern District of New York, Marla Alhadeff, Assistant U.S. Attorney, New York City, of counsel), for Intervenor United States of America.
 Before: VAN GRAAFEILAND, WALKER and LEVAL, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Jason B. Nicholas, an indigent prisoner currently serving a New York State court sentence of 6 1/3 to 19 years' imprisonment, petitions this Court for relief by way of mandamus, injunction or declaratory judgment invalidating the filing fee provisions of the Prison Litigation Reform Act. 28 U.S.C. § 1915. Because appeals in the two above-entitled actions presently are pending, we have jurisdiction to consider the petition. We thus have authority pursuant to 28 U.S.C. § 2201 to declare whether the filing fee provisions are constitutional. See Seguros Tepeyac, S.A., Compania Mexicana de Seguros Generales v. Bostrom, 360 F.2d 154, 155 (5th Cir.1966)(per curiam). For the reasons that follow, we declare and adjudge that the filing fee provisions at issue satisfy constitutional standards and are valid and enforceable.
 
 
 2
 In October 1995, Nicholas, a self-proclaimed "active pro-se litigant", brought the above-entitled actions in forma pauperis in the United States District Court for the Southern District of New York. In Nicholas v. Tucker, et al., Nicholas alleged constitutional violations arising out of his discipline for improper use of state property. On February 26, 1996, the district court denied Nicholas's motion for a preliminary injunction and on April 5, 1996, he appealed to this Court. In Nicholas v. Miller, et al., Nicholas alleged that his constitutional rights were violated when the defendants denied his request to form a "Prisoners' Legal Defense Center." On June 10, 1996, the district court ordered the complaint dismissed and a judgment of dismissal was entered. On June 23, 1996, Nicholas filed a notice of appeal.
 
 
 3
 In due course, Nicholas was informed by court personnel that unless he complied with the requirements of section 1915, his appeals would be dismissed. Nicholas complied with the statutory requirements and filed the instant petition.
 
 DISCUSSION
 
 4
 Congress adopted the Prison Litigation Reform Act with the principal purpose of deterring frivolous prisoner lawsuits and appeals. See Leonard v. Lacy, 88 F.3d 181, 185 (2d Cir.1996). Congress concluded that one means of achieving this result would be to require prisoners seeking in forma pauperis appellate status to pay, to the extent they are financially able, the normal filing fee that is imposed in a civil action or appeal (here $105 for each appeal). The challenged provisions of the Act require would-be in forma pauperis appellants to submit a certified copy of their prison trust account to the court and pay the filing fee by means of a modest deposit and subsequent monthly installments. Although the prisoner remains responsible for payment of the entire fee, the initial and installment payments are not set in fixed amounts, but rather are to be calculated on a case-by-case basis in direct relation to the prisoner's ability to pay. The statute provides:
 
 
 5
 if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of--
 
 
 6
 (A) the average monthly deposits to the prisoner's account; or
 
 
 7
 (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.
 
 
 8
 28 U.S.C. § 1915(b)(1). After the initial partial filing fee has been collected, the prisoner must make monthly payments in the amount of 20% of the income credited to his account in the preceding month, so long as the account contains more than $10, until the entire fee is paid. 28 U.S.C. § 1915(b)(2). A prisoner who is unable to pay the fee still may maintain his suit or appeal, however, because the Act provides that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C. § 1915(b)(4). Finally, the Act does not affect the prisoner's right to bring an action in state court or to seek redress through state administrative grievance procedures.
 
 
 9
 To date, three of our sister Courts of Appeals have rejected constitutional challenges to the Act's filing fee provisions. See Mitchell v. Farcass, 112 F.3d 1483, 1487 (11th Cir. 1997) (the Act does not violate Equal Protection Clause); Roller v. Gunn, 107 F.3d 227 (4th Cir.1997) (the Act does not unconstitutionally bar access to courts and does not violate indigent prisoners' equal protection rights); Hampton v. Hobbs, 106 F.3d 1281 (6th Cir.1997) (fee requirements do not violate indigent prisoners' right of access to courts or rights under the First Amendment, Due Process Clause, Equal Protection Clause or Double Jeopardy Clause). Nicholas is not deterred.
 
 
 10
 Nicholas first contends that the Act violates indigent prisoners' equal protection rights because it requires them, unlike non-incarcerated indigents, to pre-pay court filing fees. We disagree. Although, unlike the Fourteenth Amendment, the Fifth does not contain an equal protection clause, "it does forbid discrimination that is 'so unjustifiable as to be violative of due process.' " Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 1189, 12 L.Ed.2d 218 (1964) (quoting Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954)). The standards for analyzing equal protection claims under either amendment are identical. See Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228, 43 L.Ed.2d 514 (1975).
 
 
 11
 It is by now well-established that the constitutional guarantee of equal protection does not forbid all classifications, but rather "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992); see Allen v. Cuomo, 100 F.3d 253, 260 (2d Cir.1996) (citing City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)). Accordingly, unless the filing fee requirements burden a fundamental right or draw distinctions based on a suspect classification, we will uphold their validity if they are rationally related to a legitimate governmental interest. See City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). As discussed below, the filing fee provisions of the Act do not unconstitutionally impinge on indigent inmates' right of meaningful access to the courts or right to petition the courts for redress. Furthermore, inmates are not a suspect class such that a more exacting scrutiny is required. See Allen, supra, 100 F.3d at 260 n. 1 (rejecting inmates' claim that prison disciplinary surcharges violated the Equal Protection Clause because, unlike other mandatory state surcharges, they did not provide a hardship waiver for indigent inmates); Zipkin v. Heckler, 790 F.2d 16, 18 (2d Cir.1986) (rejecting inmate's equal protection challenge to statute suspending Social Security benefits during period of incarceration). The courts reason that prisoners are not situated similarly to non-incarcerated persons since their rights "are necessarily limited because of their incarceration, [and] all their essential needs, such as food, shelter, clothing and medical care are provided by the state." Allen, 100 F.3d at 260-61; see also Zipkin, 790 F.2d at 18 ("[P]risoners, as a group, do not have the need for a continuing source of income that nonprisoners typically may have."). In In re Epps, 888 F.2d 964 (2d Cir.1989), this Court upheld a district court rule requiring prisoners but not other in forma pauperis litigants to pay partial filing fees, recognizing that "what constitutes the 'necessities of life' that must be purchased is obviously different for prisoners, most of whose necessities are paid for by the jurisdiction that incarcerates them." Id. at 967.
 
 
 12
 The Act easily passes the rational basis test. The problem of frivolous prisoner lawsuits has been well-documented and need not be repeated here. Suffice it to say that federal courts spend an inordinate amount of time on prisoner lawsuits, only a very small percentage of which have any merit. See Roller, 107 F.3d at 230 (documenting excessive pro-se filings by prisoners); Young v. Selsky, 41 F.3d 47, 54-57 (2d Cir.1994) (Van Graafeiland, J., dissenting) (same), cert. denied, 514 U.S. 1102, 115 S.Ct. 1837, 131 L.Ed.2d 756 (1995). Although Nicholas contends that the charges of excessive prisoner litigation are exaggerated, Congress's conclusion to the contrary is amply supportable and clearly reasonable. We therefore have little trouble holding that the Act's goal of relieving the pressure of excessive prisoner filings on our overburdened federal courts is a constitutionally legitimate one. See Hampton, 106 F.3d at 1287 ("Deterring frivolous prisoner filings in the federal courts falls within the realm of Congress's legitimate interests....").
 
 
 13
 Moreover, the means Congress chose to achieve this objective are plainly rational. Prior to the enactment of the in forma pauperis amendments, inmates suffered no economic disincentive to filing lawsuits. Indeed, the very nature of incarceration--prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials--has fostered a " 'nothing to lose and everything to gain' " environment which allows inmates indiscriminately to file suit at taxpayers' expense. See Anderson v. Coughlin, 700 F.2d 37, 42 (2d Cir.1983) (opinion of Cardamone, J.) (quoting Jones v. Bales, 58 F.R.D. 453, 463-64 (N.D.Ga.1972), aff'd, 480 F.2d 805 (5th Cir.1973)). "As a result, the federal courts have observed that prisoner litigation has assumed something of the nature of a 'recreational activity.' " Roller, 107 F.3d at 234 (citing Gabel v. Lynaugh, 835 F.2d 124, 125 n. 1 (5th Cir.1988)(per curiam)). By making prisoners at least partially responsible for the costs of their suits, the Act undoubtedly will discourage frivolous filings. As one oft-quoted Senator remarked:
 
 
 14
 Section 2 will require prisoners to pay a very small share of the large burden they place on the Federal judicial system by paying a small filing fee upon commencement of lawsuits. In doing so, the provision will deter frivolous inmate lawsuits. The monetary outlay will force prisoners to think twice about the case and not just file reflexively. Prisoners will have to make the same decision that law-abiding Americans must make: Is the lawsuit worth the price?
 
 
 15
 141 Cong. Rec. S7526 (May 25, 1995) (statement of Senator Kyl) (citation omitted). See also Leonard v. Lacy, supra, where we said:
 
 
 16
 By requiring the prisoner to file a certified copy of his trust account statement and to become obligated to pay the filing fee before frivolousness is assessed, many prisoners can be expected to make their own assessment of frivolousness and will elect not to file a considerable number of complaints and appeals.
 
 
 17
 Nor is there any unfairness in imposing the fee obligation, subject to installment payments, upon all prisoners. Every fee-paying litigant who files a lawsuit or takes an appeal accepts the risk that the complaint or appeal may be determined to be frivolous, in which event the complaint or appeal will be dismissed and the filing fee will be lost. There is nothing unfair about obliging prisoners to accept that same risk, and there is every reason to believe Congress expected precisely that result.
 
 
 18
 88 F.3d at 185 (citation omitted).
 
 
 19
 Nicholas's argument that the Act's filing fee provisions unconstitutionally impinge on his right of access to the courts by stripping him of the "capability" of bringing a civil action is equally without merit. Prisoners, of course, do enjoy a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). However, the challenged provisions of the Act do not deny prisoners such meaningful access. An overriding theme of the in forma pauperis amendments is that in no event shall a prisoner unable to afford the filing fee be prevented from pursuing his claim.
 
 
 20
 This saving provision makes Nicholas's reliance on the line of Supreme Court cases beginning with Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), and continuing through M.L.B. v. S.L.J., --- U.S. ----, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), inapposite. In each of these cases the Court has, in one circumstance or another, struck down a statute or rule which required the payment of court filing or transcript fees despite the litigant's inability to pay.
 
 
 21
 Nicholas's as-applied challenge to the filing fee provisions is equally unpersuasive. Nicholas does not assert a complete lack of funds. Rather he decries his inability to expend his limited funds in such manner as he chooses. However, that is the very purpose of the Act. "Requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state." Roller, supra, 107 F.3d at 233. We find nothing in Nicholas's peculiar situation that removes his case from the broad holding of statutory constitutionality.
 
 
 22
 Finally, Nicholas argues that the Act's filing fee requirements unconstitutionally burden his First Amendment right to petition the courts for redress because they operate as a "financial disincentive to speech." We believe that this argument is for the most part subsumed within Nicholas's claim that the amendments deny him access to the courts, a claim we have already rejected, and is otherwise meritless.
 
 
 23
 In sum, we declare and adjudge that the filing fee provisions of the Prison Litigation Reform Act contained in 28 U.S.C. § 1915 are constitutional, both as generally applied and as specifically applied to petitioner Jason Nicholas.
 
 
 24
 The request for invalidation is DENIED.