John A. CUCCO, Plaintiff,

v.

U.S. BUREAU OF PRISONS; United States of America; William C. Henderson, Caption [sic]; K. Bittenbender, Lieutenant; and Five Unknown Named S.O.R.T. Members, Defendants.

No. 98 Civ.9009(WHP).

United States District Court, S.D. New York.

Aug. 2, 2004.

John A. Cuoco, Reg. No. 80894–054, Rochester, MN, Plaintiff pro se.

Lisa R. Zornberg, Assistant United States Attorney, Southern District of New York, New York, NY, for defendants.

### MEMORANDUM and ORDER

PAULEY, District Judge.

This motion concerns an egregious abuse of the *in forma pauperis* privilege through fraud. Plaintiff *pro se,* John A. Cuoco[1] ("Cuoco"), a serial litigant, seeks an unspecified amount of monetary damages against defendants the United States Bureau of Prisons ("BOP"), the United States of America, Captain William C. Henderson, Lieutenant K. Bittenbender, and five unidentified individuals for exces-

---

1. Plaintiff is a transgender person. (Plaintiff's Opposition, dated June 29, 2004 ("Pl. Opp."), at 33.) In deference to plaintiff's stated preference, this Court refers to plaintiff using female pronouns. *See Cuoco v. Moritsugu,* 222 F.3d 99, 103 n. 1 (2d Cir.2000).

sive force, deprivation of equal protection and negligent destruction of personal property. Cuoco, who is incarcerated at the Federal Medical Center in Rochester, Minnesota, advances federal claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 1346(b), 2671, *et seq.*, 42 U.S.C. § 1985(3) and the Equal Protection Clause.

By Order dated September 22, 2003 (the "September 2003 Order"), this Court dismissed Cuoco's *Bivens* claim for failure to exhaust administrative remedies and granted summary judgment to the Government on Cuoco's FTCA assault and battery claim *See Cuoco v. United States Bureau of Prisons*, 03 Civ. 9009(WHP), 2003 WL 22203727 (S.D.N.Y. Sept. 22, 2003). Thereafter, this Court approved a settlement on Cuoco's remaining claim for $218. (Order, dated Oct. 31, 2003.) Currently before this Court are defendants' motion to vacate the partial judgment and their motion to dismiss the entire action. For the reasons set forth below, defendants' motions are granted.

## BACKGROUND

### A. Cuoco's Application to Proceed In Forma Pauperis

Familiarity with the facts and this Court's previous Memoranda and Orders is presumed.[2] Cuoco applied for *in forma pauperis* ("IFP") status in this case on October 27, 1998. (Declaration of Lisa Zornberg, dated Apr. 23, 2004 ("Zornberg Decl."), Exhibit B: Application to Proceed Without Prepayment of Fees, at 3.) On her IFP application to this Court, Cuoco re-

plied in the affirmative to the following question: "Do you own real estate, stocks, bonds, securities, or other financial instruments, automobiles or any other thing of value?" (Zornberg Decl., Ex. B at 2.) Cuoco explained her answer by stating that she had "sufficient funds in a financial account in the community to pay the $150 fee; however BOP prison officials at ADX Florence [we]re disallowing [her] from receiving, possessing, or using the withdrawal checks to pay the fee." (Zornberg Decl., Ex. B at 2–3.) Cuoco also averred that the BOP "has placed excessive and unreasonable liens on [her] prison account without due process of law, making it unfeasible to have monies deposited" in her prison account and that due to "these extraordinary circumstances beyond h[er] control, plaintiff is 'unable to pay' " the filing fee. (Zornberg Decl., Ex. B at 3.) At the time of her IFP application, Cuoco's prison account reflected a negative balance of $558.70 due to an outstanding BOP lien for damage to BOP property. (Declaration of Diana Lee, dated Mar. 26, 2004 ("Lee Decl.") Exhibit C: Letter, dated Feb. 8, 1999 and Attachment, at 1; Zornberg Decl., Ex. B at 4.)

Cuoco acknowledged her legal obligation to pay the filing fee in this action by signing a Prisoner Authorization form on November 10, 1998 (the "November Authorization form"), which stated: "I understand that by signing and returning this notice to the court, the entire court filing fee of $150 will be paid in installments by automatic deductions from my prison trust fund account even if my case is dismissed." (Zornberg Decl., Ex. B at 5.) Cuoco also stated: "I . . . request and authorize the agency holding me in custody to calculate

---

**2.** *See Cuoco v. United States Bureau of Prisons*, 03 Civ. 9009(WHP), 2003 WL 22203727 (S.D.N.Y. Sept. 22, 2003); *Cuoco v. United States Bureau of Prisons*, 98 Civ. 9009(WHP), 2003 WL 1618530 (S.D.N.Y. Mar. 27, 2003); *Cuoco v. United States Bureau of Prisons*, 98 Civ. 9009(WHP), 2001 WL 167694 (S.D.N.Y. Feb. 16, 2001); *Cuoco v. United States Bureau of Prisons*, 98 Civ. 9009(WHP), 2000 WL 347155 (S.D.N.Y. Mar. 31, 2000).

the amounts specified by 28 U.S.C. § 1915(b), to deduct those amounts from my prison trust fund account and to disburse those amounts to the United States District Court for the Southern District of New York." (Zornberg Decl., Ex. B at 5.) Based on those sworn statements, Cuoco's application for IFP status was granted on December 22, 1998. (Zornberg Decl., Ex. B at 1.)

On October 7, 1998, three weeks prior to submitting her application for IFP status in this case, Cuoco accepted an offer of judgment for $10,000 in another action captioned: *Cuoco v. United States*, 97 Civ. 1268(RPP) (S.D.N.Y. Oct. 3, 1998) (Zornberg Decl., Exhibit T: Docket and Case Materials, at 5–6.) Additionally, on October 21, 1998, one week prior to submitting her IFP application, Cuoco settled another suit, captioned *Cuoco v. United States*, 93 Civ. 2806(AGS) (S.D.N.Y. Oct. 14, 1998) for $3,500. (Zornberg Decl., Exhibit P: Docket and Case Materials, at 12–14.)

In November 1998, while Cuoco's IFP application was pending, she separately contacted the two different Assistant United States Attorneys ("AUSAs") handling the settlements and requested that they send the payments to her mother's address in Staten Island rather than to her prison account. (Zornberg Decl., Ex. P at 15, Ex. T at 7–8.) The AUSAs consented to Cuoco's request. On January 26, 1999, the Government sent a $10,000 check to the Staten Island address and another check for $3,500 followed on February 2, 1999. (Zornberg Decl., Ex. T at 9–11, Ex. P at 16–17). Cuoco contends that the $13,500 was sent to Staten Island pursuant to the settlements; however, neither settlement agreement contains such a term. (Pl. Opp. at 12–13; Zornberg Decl., Ex. P at 12–13, Ex. T at 5–6.)

Additionally, it is undisputed that Cuoco prohibited prison officials from accepting checks on her behalf from July 9, 1997 through August 26, 2000, and again from October 30, 2003 through February 12, 2004 by signing an authorization form stating:

> I hereby do not authorize ... the ... Bureau of Prisons ... to sign my name as endorsement on all checks, money orders, or bank drafts, for deposit to my credit in the Prisoner's Trust Fund Account, as long as I am a prisoner in the Bureau of Prisons. I understand that by not providing this authorization, I will not be able to receive checks ... while confined.

(Lee Decl., Exhibit C: Letter and Authorization Forms, at 3; Exhibit D: Cuoco Authorization Forms, at 1–3.) Consequently, the BOP was prohibited from depositing money into Cuoco's prison trust fund account during these periods. (Lee Decl., Ex. C at 3; Ex. D at 1–3.)

### B. *Procedural History*

On September 22, 2003, this Court granted defendants' motion to dismiss Cuoco's *Bivens* claim as well as their summary judgment motion on Cuoco's FTCA claims. (Zornberg Decl., Ex. A at 7.) Only Cuoco's $218 negligence claim remained. (Zornberg Decl., Ex. A at 7.) On October 31, 2003, the parties settled the negligence claim and consented to entry of a partial judgment for $218. (Zornberg Decl., Ex. A at 14; Ex. G: Transcript of October 23, 2003 conference, at 3–5.) During the October 23 conference, Cuoco requested an additional $150 for the district court filing fee, which Cuoco had not paid. (Zornberg Decl., Ex. G at 5.) Cuoco cited the PLRA's mandate for prisoners to pay filing fees in requesting the additional $150 award.[3]

---

**3.** At the October 23 conference, this Court stated that it would waive the filing fee. (Zornberg Decl., Ex. G at 6.) The PLRA, however, forbids judicial waiver of mandatory filing fees. *See* 28 U.S.C. § 1915. Thus, this Court's waiver is without effect.

(Zornberg Decl., Ex. G at 5–6.) Cuoco has not paid any portion of the $150 filing fee required in this case by the PLRA. (*See* Declaration of Cindy Barrois, dated Apr. 22, 2004 ("Barrois Decl.") at ¶ 5.)

In a follow-up letter to AUSA Zornberg, Cuoco requested that the Government send the $218 settlement check to her mother's address in Staten Island, instead of her prison account. (Zornberg Decl., Exhibit H: Letter from Cuoco to AUSA Zornberg, at 1.) In that letter, Cuoco demonstrated her familiarity with the PLRA's mandatory filing fee provision by explaining that "any monies deposited into my prison account that exceed $10.00 are required by the PLRA to go towards the outstanding filing fee in an amount of 20% of the account balance." (Zornberg Decl., Ex. H at 1.)

### C. *Cuoco's Litigation Activities*

Since Cuoco's incarceration in September 1991, she has filed 491 administrative remedy complaints and sued the Government and its employees 17 times. (Lee Decl., ¶¶ 3–4; Lee Decl., Exhibit A: Cuoco Records I, Exhibit B: Cuoco Records II; Zornberg Decl., Ex. A, L–Z, AA: Cuoco Docket Sheets.) Fifteen of these suits were civil actions against the Government, and Cuoco obtained IFP status each time. (Zornberg Decl., Exs. A, L–T, V–Z, AA.) Since enactment of the PLRA in 1996, Cuoco has secured IFP status in eight federal civil actions. (Zornberg Decl., Exs. A, T, V–Z, AA.) Cuoco has not paid any portion of the filing fees in any of those suits. (*See* Barrois Decl., ¶¶ 2–5.)

Cuoco disclosed that she had "sufficient funds in a financial account in the community" to afford the filing fee in each suit. (Zornberg Decl., Ex. B; Ex. V at 6–7; Ex. W at 11–13; Ex. X at 10–12; Ex. Y at 6–8; Ex. Z at 7–9.) In each IFP application, Cuoco claimed that BOP officials had made it "unfeasible" for her to have monies de-posited into her prisoner account and that she was thus "unable" to pay the filing fee. (Zornberg Decl., Ex. B; Ex. V at 6–7; Ex. W at 11–13; Ex. X at 10–12; Ex. Y at 6–8; Ex. Z at 7–9.) Cuoco never disclosed that she was prohibiting prison officials from depositing funds into her prison account. Thus, she created the conundrum. (Lee Decl. Ex. C at 3, Ex. D at 1–3.) Specifically, on two IFP applications Cuoco failed to disclose that she had received $13,500 in settlement funds. (Zornberg Decl., Ex. Y at 5–8; Ex. Z at 6–9.) Instead, Cuoco averred that she "actually would prefer to pay the filing fee to avoid application of the PLRA to this case," but that due to liens that prison officials had placed on her prison trust account, it was "unfeasible" to have monies placed into her account to use for paying fees. (Zornberg Decl., Ex. Y at 6–7; Ex. Z. at 7–9.)

In her response to the Government's motion to dismiss, Cuoco elaborated on the status of her prison account, claiming that prison authorities at ADX Florence, Colorado "insisted" that she not deposit the $13,500 settlements into her prison account. (Pl. Opp., at 13.) Cuoco surmises that prison officials were protecting her from "inmates and prison staff extorting [her] for money, inmates coercing [her] into providing them with legal assistance . . .; Y2K computer glitches deleting [her] prison account balance, and about twenty other admittedly valid reasons." (Pl. Opp., at 13.) Cuoco asserts that she segregated the settlements from her prison account "because $13,500 is an unnecessarily large sum of money to have in prison: [sic] in an account that pays no interest." (Pl. Opp. at 13–14.)

### DISCUSSION

### I. *Proceeding In Forma Pauperis*

The IFP statute permits "commencement . . . of any Suit . . . without prepay-

ment of fees or security therefore by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefore." 28 U.S.C. § 1915(a)(1); *accord Leonard v. Lacy,* 88 F.3d 181, 183 (2d Cir.1996). The IFP statute does not permit waiver of the mandatory filing fee for federal suits. 28 U.S.C. § 1915(e)(2)(a); *accord Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Rather, prisoners must pay the filing fee gradually from their prisoner bank accounts: "If a prisoner brings a civil action or files an appeal *in forma pauperis,* the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). To collect such a fee, the court may "assess and, when funds exist collect," first an initial payment and then smaller payments from the prisoner's account "until the filing fees are paid." 28 U.S.C. § 1915(b); *accord Nicholas,* 114 F.3d at 19.

■ The ability to proceed IFP is a "privilege provided for the benefit of indigent persons." *Chung v. Dushane,* 03 Civ. 5955, 2003 WL 22902561, at *2 (N.D.Ill. Dec.9, 2003); *see also Hobbs v. County of Westchester,* 00 Civ. 8170(JSM) 2002 WL 868269, at *1 (S.D.N.Y. May 3, 2002) ("The purpose of the statute permitting litigants to proceed *in forma pauperis* is to insure that indigent persons have equal access to the judicial system."). Additionally, "the court system depends on the honesty and forthrightness of applicants to ensure that the privilege is not abused." *Chung,* 2003 WL 22902561, at *2.

■ To discourage abuse of this privilege, the statute provides that "notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(a); *accord Anderson v.*

*Coughlin,* 700 F.2d 37, 42 (2d Cir.1983) (citation omitted). "[T]he purpose of this provision is to 'weed out the litigants who falsely understate their net worth in order to obtain *in forma pauperis* status when they are not entitled to that status based on their true net worth.'" *Hobbs,* 2002 WL 868269, at *2 (quoting *Attwood v. Singletary,* 105 F.3d 610, 613 (11th Cir.1997)); *accord Matthews v. Gaither,* 902 F.2d 877, 881 (11th Cir.1990). The 1996 amendment to the IFP statute reinforced the mandatory nature of the requirement of dismissal for false allegations of poverty. *Compare* 28 U.S.C. § 1915(e) ("shall dismiss"), *with* former statute 28 U.S.C. § 1915(d) ("may dismiss"); *see also Mathis v. New York Life Ins. Co.,* 133 F.3d 546, 547 (7th Cir. 1998) (noting requirement of mandatory dismissal for false allegations of poverty under amended statute).

## II. *Cuoco's Abuse of the IFP System*

■ Since Cuoco deliberately concealed her finances and misrepresented on her IFP application to convey the impression that she could not pay the filing fee, this action must be dismissed. *See Attwood v. Singletary,* 105 F.3d 610, 611–13 (11th Cir. 1997) (affirming dismissal where plaintiff falsely claimed poverty and habitually abused the IFP system). First, Cuoco was not impoverished at the time she applied for IFP status. (Zornberg Decl., Ex. B at 2–3.) Cuoco knowingly misled this Court by failing to disclose that she agreed to accept $13,500 from the Government just three weeks prior to seeking IFP certification. (Zornberg Decl., Ex. B; Zornberg Decl., Ex. P at 12–13; Zornberg Decl., Ex. T at 5–6). Indeed, despite her contention that she did not know when the funds would arrive (Pl. Opp. at 10), it is "inconceivable" that she innocently overlooked her obligation to report those funds. *See Thomas v. Gen. Motors Acceptance,* 149 F.Supp.2d 495, 497 (N.D.Ill.

2001), *aff'd* 288 F.3d 305 (7th Cir.2002). Cuoco's calculated omissions demonstrate a "total disregard for the truth" about her finances, justifying dismissal under § 1915(e)(2)(a). *Bell v. Dobbs Int'l Serv.,* 6 F.Supp.2d 863, 864–65 (E.D.Mo.1998). It is well-established that an allegation of poverty is untrue when an IFP applicant conceals a source of income in order to gain access to a court without prepayment of fees. *See, e.g., Thomas v. Gen. Motors Acceptance,* 288 F.3d 305, 306 (7th Cir. 2002); *Mathis,* 133 F.3d at 547 (affirming dismissal pursuant to § 1915(e)(2)(a) where plaintiff experienced with IFP system failed to disclose ownership of a home with $14,000 of equity on his IFP application); *Dawson v. Lennon,* 797 F.2d 934, 934 (11th Cir.1986) (affirming dismissal pursuant to IFP statute where applicant lied about his property and financial holdings to obtain IFP status).

Cuoco's omissions are remarkably similar to those in *Thomas v. General Motors Acceptance,* 288 F.3d 305 (7th Cir.2002). There, the Seventh Circuit affirmed dismissal pursuant to 28 U.S.C. § 1915(e)(2)(a) where plaintiff failed to disclose on his IFP application that he had requested a retirement distribution of $73,714 just nine days prior to submitting his IFP affidavit. *Thomas,* 288 F.3d at 306. Akin to Cuoco, Thomas asserted that he did not disclose the retirement check because he did not know when he would actually receive the funds. *Thomas v. Gen. Motors Acceptance,* 149 F.Supp.2d 495, 497 (N.D.Ill.2001). The district court, however, concluded that it was "inconceivable that [plaintiff] could have believed that he was not required to report these substantial funds on his IFP application." *Thomas,* 149 F.Supp.2d at 498. In affirming dismissal, the Seventh Circuit held that "because the allegation of poverty was false, the suit had to be dismissed; the judge had no choice." *Thomas,* 288 F.3d at 306.

Cuoco created an illusion of poverty through a series of deceptive acts, including her request for $13,500 in settlement funds to be sent to Staten Island instead of her prison account, her statement that it was "unfeasible" for her to have money deposited in her account, and her efforts to prohibit money from entering her prison bank account. Dismissal with prejudice is appropriate when an applicant misrepresents her financial arrangements in bad faith to obtain IFP status. *See Attwood,* 105 F.3d at 613; *Bell,* 6 F.Supp.2d at 864.

Cuoco declared under the penalties of perjury on her IFP application that "due to circumstances beyond her control" it was "unfeasible" for her to have monies deposited in her account. (Zornberg Decl., Ex. B at 2–3.) Cuoco alludes to the November Authorization form on her IFP application to show that filing fees could be collected from her prisoner account. (Pl. Opp. at 9.) But, that was a fraud. Cuoco engineered her prison account to ensure that it would never have a positive balance. At the time she signed the November Authorization, Cuoco knew that district court filing fees could not be recouped from her prison account because she had blocked all deposits. (Lee Decl., Ex. C at 3; Zornberg Decl., Ex. B at 3.) That smacks of bad faith. While Cuoco possessed "sufficient funds in a financial account in the community" to pay the filing fee, she kept the money out of reach by refusing to authorize prison officials to accept checks on her behalf. (Lee Decl., Ex. C at 3; Zornberg Decl., Ex. B at 3.) Cuoco's diversion of $13,500 in settlements to her mother's address in Staten Island perpetuated the negative balance in her prison account. Had she authorized the BOP to deposit the settlement funds, Cuoco could have paid the filing fee with ease. Instead, she

chose to deceive this Court. (Lee Decl., Ex. C at 3, Ex. D at 1–3.)

Finally, Cuoco's litigation activities in other federal actions demonstrate her bad faith. Repeatedly, she mischaracterized her financial condition in her IFP applications. Despite ample resources, she failed to pay mandatory filing fees. (Zornberg Decl., Ex. B; Ex. V at 6–7; Ex. W at 11–13; Ex. X at 10–12; Ex. Y at 6–8; Ex. Z at 7–9.) These activities, when coupled with her nuanced understanding of the PLRA, reveal Cuoco's skillful concealment of assets. (Lee Decl., Ex. 1 ¶ 10; Zornberg Decl., Exs. A, G at 3–5, T, V–Z, AA.) Thus, this Court must dismiss this action with prejudice. *See, e.g., Thomas,* 288 F.3d at 305 (affirming dismissal with prejudice where litigant was "assiduous" in concealing assets); *Dawson,* 797 F.2d at 936 (affirming dismissal with prejudice where IFP plaintiff's "clear pattern of attempts to deceive the courts on his financial status in this and other cases justifies the district court's imposition of the severe sanction of dismissal with prejudice"); *Thompson v. Carlson,* 705 F.2d 868, 869 (6th Cir.1983) (affirming dismissal with prejudice where IFP "plaintiff had intentionally misrepresented his financial status in the affidavit to support his request for pauper status"); *Bell,* 6 F.Supp.2d at 865 ("[T]he materiality of the omissions and misrepresentations, the lack of a credible 'innocent' explanation ... and [plaintiff's] apparent and total disregard for the truth, completeness, and accuracy of the [IFP] affidavit" mandates dismissal of claim pursuant to 28 U.S.C. § 1915(e)(2)(a)).

## CONCLUSION

For the foregoing reasons, defendants' motions to vacate the $218 partial judgment and to dismiss the entire action are granted with prejudice. The Clerk of the Court is directed to mark this action closed.