Detroy LIVINGSTON, Plaintiff,

v.

Thomas J. PISKOR, et al., Defendants.

No. 99–CV–6169L.

United States District Court,
W.D. New York.

April 3, 2003.

Detroy Livingston, Malone, NY, pro se.

Gary M. Levine, NYS Attorney General's Office, Rochester, NY, for defendants.

*DECISION AND ORDER*

LARIMER, District Judge.

## INTRODUCTION

This is a *pro se* civil rights action brought by Detroy Livingston, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), pursuant to 42 U.S.C. § 1983. On September 30, 2002, this Court issued a Decision and Order granting defendants' motion for partial summary judgment, and dismissing all of plaintiff's claims except for his claims against defendants Piskor, Sette, Mackiewicz, Dunshie, Wendle, and Hoinski relating to the alleged assault on plaintiff on February 25, 1997. *Livingston v. Goord,* 225 F.Supp.2d 321 (W.D.N.Y.2002).

The motion for partial summary judgment, which was filed in 1991, did not seek summary judgment on behalf of the above mentioned defendants. After the motion was filed, however, the Supreme Court handed down its decision in *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), which changed the legal landscape in this circuit regarding the application of the exhaustion requirement of the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Prior to the Supreme Court's decision in *Nussle,* the law in the Second Circuit was that this exhaustion requirement did not apply to claims pertaining to isolated incidents affecting particular inmates. *See Nussle v. Willette*, 224 F.3d 95 (2d Cir.2000). In *Nussle,* however, the Supreme Court held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." 534 U.S. at 520, 122 S.Ct. 983.

The remaining defendants have now moved for leave to amend their answer to add the affirmative defense that plaintiff has failed to exhaust his administrative remedies, and move for summary judgment dismissing plaintiff's remaining claims for failure to exhaust.

## DISCUSSION

### I. Motion for Leave to Amend

 Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." "Parties are generally allowed to amend their pleadings absent bad faith or prejudice." *Commander Oil Corp. v. Barlo Equip. Corp.,* 215 F.3d 321, 333 (2d Cir.), *cert. denied,* 531 U.S. 979, 121 S.Ct. 427, 148 L.Ed.2d 436 (2000). "Thus, absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's man-

date must be obeyed." *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 283 (2d Cir.) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000).

Here, I see no basis for finding the existence of any of these factors militating against granting leave to amend, and defendants' motion is therefore granted. Although defendants were presumably aware of the PLRA's exhaustion requirement at the time that they filed their answer in this action, it would have been futile for them to assert an exhaustion defense at that time, given the then-existing law in this circuit. It was not until the Supreme Court's decision in *Nussle* that defendants could have known that exhaustion was required under the circumstances presented here. *See Abney v. County of Nassau,* 237 F.Supp.2d 278, 281 (E.D.N.Y.2002) ("the affirmative defense was not available to be asserted in this case until 2002 and Defendants cannot therefore be faulted for failing to earlier raise the defense").

Although the motion now before me was filed about seven and a half months after *Nussle* was decided, and nine days after my September 30 decision, I also find no undue delay here. It necessarily took some time for counsel to learn of, obtain a copy of, and read, *Nussle;* to determine which pending cases might be affected by that decision; to attempt to find out whether plaintiff had exhausted his administrative remedies; and to prepare and submit the motion papers in this case. Thus, there is no indication of dilatory motive or bad faith here.

### II. Motion for Summary Judgment

 I also find, however, that defendants' motion for summary judgment must be denied at this time. Viewing the record in the light most favorable to plaintiff, the nonmoving party, I find that a genuine issue of fact exists as to whether plaintiff did exhaust his administrative remedies before bringing this action.

In support of their motion, defendants have submitted affidavits of George Struebel, the inmate grievance coordinator at Attica

Correctional Facility (where the alleged assault occurred), and Thomas Eagen, the director of the DOCS Inmate Grievance Program. Struebel states that he has caused a search to be made of the records at Attica regarding plaintiff, and that Struebel and his staff could find no record of any grievance filed by plaintiff regarding an alleged use of force by defendants on February 25, 1997. Struebel Aff. (Defendants' Notice of Motion, Ex. A) ¶ 3. Eagen states that he caused a similar search to be made of the Central Office Review Committee's ("CORC") records and that no record was found of any appeals filed by plaintiff of any grievances concerning the alleged use of force. Eagen Aff. (Defendants' Notice of Motion, Ex. B) ¶ 6. Both of these witnesses also state that the use of force is a grievable issue under DOCS regulations.

In response, plaintiff states that he "believe[s]" that he grieved this incident because plaintiff's "habit was to grieve any/all incident [sic] that happened to [him] while in Attica." Plaintiff's Aff. (Docket # 108) ¶ 4. He states that while he was at Attica, grievances that he filed were often either not responded to at all, or were returned to him as "not grievable." Plaintiff's Aff. ¶¶ 7, 10. Plaintiff contends that at around the time of this incident, "George Struebel would tell" plaintiff that the issuance of a misbehavior report against an inmate in connection with an alleged assault "made [the assault] a non-grievable issue in accordance with" DOCS directives. Plaintiff's Aff. ¶ 8.

Plaintiff also states that he "sent grievances directly to the CORC office in Albany back in 1997 because [he] did not receive any response from the Attica IGRC [Inmate Grievance Review Committee]. CORC would send it back stating that Directive # 4040 does not say to send a grievance directly to them." Plaintiff's Aff. ¶ 9. He states that "[n]o record would be made of grievances that was not responded to by the Attica IGRC. It simply would be discarded."

Plaintiff's Aff. ¶ 11. That, he states, would explain why no record of his grievances exists today.[1]

Bearing in mind that defendants bear the burden of proof on this issue, see Jenkins v. Haubert, 179 F.3d 19, 28–29 (2d Cir.1999) (exhaustion is an affirmative defense which must be raised and proved by defendant); Reyes v. Punzal, 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("defendant bears the burden of proving plaintiff's failure to comply with the exhaustion requirement" of PLRA), I cannot, on this record, grant summary judgment in their favor. If plaintiff's allegations are correct, then the fact that defendants were unable to find any record of plaintiff's grievance would not necessarily mean that no grievance was filed.

Moreover, Struebel's and Eagen's affidavits provide very little detail of the nature of the searches that they or their staffs conducted, their offices' record retention policies, or other facts indicating just how reliable or conclusive the results of those searches are. Although it may be difficult at times to prove the absence of a record, there is simply insufficient evidence before me for the Court to conclude as a matter of law that plaintiff did not file a grievance concerning these matters. See Thomas v. New York State Dep't of Correctional Services, No. 00 Civ. 7163, 2002 WL 31164546, *3 (S.D.N.Y. Sept.30, 2002) (noting that Eagen declaration submitted in that case was "totally conclusory" and that "[s]atisfactory answers to these questions [concerning the nature of the search, how long records were retained, etc.] would be necessary before we could consider granting summary judgment against Mr. Jackson").

I also note that the Second Circuit has recently expressed some concern for protecting inmates' rights in this area. In Ortiz v. McBride, 323 F.3d 191 (2d Cir.2003), the court appointed counsel for an inmate plaintiff because of the complexity of a number of issues presented in that case, including

1. Plaintiff states that he does not have a copy of his grievance because, he believes, it was stolen, along with some other legal documents, by correction officers. Plaintiff's Aff. ¶ 5. Although, as stated in my prior Decision and Order in this case, plaintiff testified at his deposition that he was able to obtain copies of the stolen documents during the course of this litigation, see Livingston, 225 F.Supp.2d at 330, it is not clear whether he got copies of all, or just some, of the allegedly stolen documents. The reason why plaintiff does not have a copy of his grievance, then, is simply one more facet of the factual issues that exist here.

whether plaintiff had complied with the PLRA's exhaustion requirement. Noting that the plaintiff had "contended that he filed written grievances without receiving a response and that he was deterred from further pursuing administrative remedies by the guards' threat of assault," the court stated, "that is enough to raise the issue" of whether an inmate who did not fully comply with the dictates of New York law nonetheless exhausted his claims in other ways, an issue that is currently before the court in four other cases as well. 323 F.3d 191, 194–95 (citing cases).

In short, the Court cannot determine at this juncture whether plaintiff has complied with the PLRA's exhaustion requirement. Although that issue is for the Court to decide as a matter of law, *Snider v. Melindez*, 199 F.3d 108, 113–14 (2d Cir.1999), the record here is too sparse, and presents conflicting evidence on this issue. As it appears that discovery is still ongoing in this case, resolution of this issue is best left for another day, upon a more complete record than the one now before me. *See Croswell v. McCoy*, No. 9:01 Civ. 00547, 2003 WL 962534, *4 (N.D.N.Y. Mar.11, 2003) (denying summary judgment on issue of exhaustion where the record was unclear regarding the efforts plaintiff took to exhaust his remedies); *Evans v. Nassau Co.*, 184 F.Supp.2d 238, 245 (E.D.N.Y.2002) (question of fact existed regarding plaintiff's attempts to exhaust his administrative remedies).

## CONCLUSION

Defendants' motion for leave to amend and for summary judgment (Docket # 103) is granted in part and denied in part. Defendants' motion for leave to amend their answer to assert the affirmative defense of failure to exhaust administrative remedies is granted. Defendants shall file an amended answer within ten (10) days after the date of entry of this Decision and Order.

Defendants' motion for summary judgment dismissing plaintiff's claims is denied.

IT IS SO ORDERED.