**Harold J. SHELL, Plaintiff,**

v.

**Correction Officer Nicholas BRZEZNIAK, et al., Defendants.**

No. 00–CV–6152L.

United States District Court, W.D. New York.

April 21, 2005.

Harold J. Shell, Elmira, NY, for Plaintiff.

Gary M. Levine, Esq., Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

Plaintiff, Harold J. Shell, Jr., an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 alleging that defendants violated his constitutional rights while an inmate at Attica, Green Haven, and Great Meadow Correctional Facilities in 1997 and 2000.

In his first amended complaint, plaintiff alleges that defendants Correctional Officers Kevin Brun, Nicholas Brzezniak, David Pirrami, and Mark Cunningham violated his Eighth Amendment rights by assaulting him on March 24, 1997 at Attica. Plaintiff alleges that defendant Brzezniak again violated his First and Eighth Amendment rights on November 28, 2000 when he assaulted him a second time at Attica in retaliation for filing this lawsuit. Plaintiff also alleges that Sergeant Richard Simmons failed to protect him from Brzezniak. For his last claim, plaintiff asserts that Great Meadow Superintendent James Stinson violated his First Amendment right to access to court by promulgating restrictive policies regarding access to legal materials. (*See* Amended and Supplemental Complaints, Dkts. ## 13, 14, and 15).

By Decision and Order (Dkt.# 44), I granted partial summary judgment in favor of defendants Brun, Brzezniak, Pirrami, and Cunningham based on collateral estoppel and dismissed plaintiff's first claim concerning the March 24, 1997 incident.

Before the Court is plaintiff's motion to amend his complaint for a third time (Dkt.# 18) [1] to add new claims and new parties pursuant to FED.R.CIV.P. 15. Plaintiff seeks to add parties he claims were previously unknown to him. He also seeks to add claims based on the denial of medical care and for incidents that occurred after he commenced the instant action. In all, plaintiff seeks to expand his first amended complaint from three claims against seven defendants to a complaint alleging fifteen claims against fifty defendants. In support of his motion, plaintiff filed hundreds of pages of exhibits and audio tapes of his disciplinary hearings.

For the reasons set forth below, plaintiff's motion to amend is granted in part and denied in part.

## DISCUSSION

### I. Motion to Amend Standards

Pursuant to FED.R.CIV.P. 15(a), leave to amend pleadings shall be freely granted when justice so requires. *See Livingston v. Piskor*, 215 F.R.D. 84, 85 (W.D.N.Y.2003). Nonetheless, the decision of whether to grant leave to amend remains within the court's discretion. *John Hancock Mut. Life Ins. Co. v. Amer-*

---

1. Although the Court's docket indicates that I previously denied plaintiff's motion to amend (*see* Dkt. # 20), that is not correct. Dkt. # 20 was mistakenly docketed as an Order denying both Dkt. # 16 and Dkt. # 18. I have not yet ruled on plaintiff's motion to amend. This Decision and Order resolves Dkt. # 18.

*ford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *cf. Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (court's decision on whether to allow amendment is reviewed for abuse of discretion).

██ In this regard, no amendment should be allowed if plaintiff could not prevail on an amended claim because it is futile or untimely, because it fails to state a claim, or because the movant engaged in undue delay. *See Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001) ("even if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c)."); *John Hancock,* 22 F.3d at 462; *McKinney v. Eastman Kodak Co.,* 975 F.Supp. 462, 465 (W.D.N.Y.1997) ("An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis.").

Defendants challenge the sufficiency of each of plaintiff's proposed amended claims. They argue that plaintiff fails, for one or more reasons, to state a claim upon which relief can be granted. In essence, defendants contend that the claims would fail to survive a motion under Fed.R.Civ.P.

12(b)(6). I examine plaintiff's fifteen proposed amended claims seriatim, bearing in mind the principles that apply to a motion to dismiss.[2]

## II. First and Third Claims—Deliberate Indifference to Serious Medical Needs at Attica

Plaintiff's first and third claims allege that defendants Kelly, McCray, Frisby, O'Connell, Laskowski, Strzelczyk, Struebel, and Eagen were deliberately indifferent to his serious medical needs in March of 1997, in violation of his Eighth Amendment rights. Plaintiff alleges that he had serious preexisting medical conditions related to his right foot, ankle, and leg that defendants failed to adequately and timely treat upon his incarceration. Plaintiff also claims that defendants failed to adequately treat him after he allegedly was assaulted on March 24, 1997.

There is no dispute that the first and third claims concern events that fall outside the three year statute of limitations applicable to § 1983 claims.[3] *See Jewell v. County of Nassau,* 917 F.2d 738, 740 (2d Cir.1990). Under these circumstances, plaintiff may amend only if the new claim would "relate back" to the date his original complaint was filed. *See* Fed.R.Civ.P. 15(c); *Soto v. Brooklyn Correctional Facility,* 80 F.3d 34, 35 (2d Cir.1996).

██ An amendment to a pleading that attempts to add a new party "relates back"

---

**2.** A court should not dismiss a complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir.1996). In making this determination, the court assumes the truth of the plaintiff's factual allegations and construes the complaint generously, drawing all reasonable inferences in plaintiff's favor. *Hirsch v. Arthur Andersen & Co.,*

72 F.3d 1085, 1088 (2d Cir.1995). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

**3.** The statute of limitations for this claim expired in or about March 2000. Plaintiff did not move to amend this claim until June 2001.

to the date of the original complaint only if: (1) the claim arises out of conduct set forth in the original pleading; (2) the party to be added received notice such that he or she will not be prejudiced in maintaining a defense; (3) the party to be added should have known that, but for a mistake of identity, the original action would have been brought against it; and (4) the second and third requirements are fulfilled within the period prescribed in FED. R.CIV.P. 4(m) for service of process. *See* FED.R.CIV.P. 15(c)(3); *Soto,* 80 F.3d at 35; *Barrow v. Wethersfield Police Dept.,* 66 F.3d 466, 468–69 (2d Cir.1995), *modified,* 74 F.3d 1366 (2d Cir.1996).

■ Plaintiff's first and third claims fail. He has not met any of the requirements outlined above, although it is the third requirement that is clearly fatal to the claims. Plaintiff alleges that he could not have named these defendants in the original pleading because he was not aware of their names until he requested information from the New York State Attorney General's Office in March 2001. (*See* Dkt. # 18, Exs. 15, 16, and 17). Even if this were the case, it does not constitute a "mistake" within the meaning of Rule 15(c). The Second Circuit has held that "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Barrow,* 66 F.3d at 470.

Plaintiff's failure to bring these claims against defendants during the applicable limitations period, therefore, is not based on a "mistake of identity," but is based on a lack of knowledge of defendants' identities. Thus, the claims do not relate back to the original pleading. *See Barrow,* 74 F.3d at 1367 ("the failure to identify individual defendants when the plaintiff knows that such defendants must be named can-

not be characterized as a mistake."); *Covington v. City of New York,* No. 95 Civ. 0196, 1997 WL 311922, *1 (S.D.N.Y. June 10, 1997) (denying plaintiff's request to amend complaint to identify one of "12 Unknown Members of the Manhattan South Tactical Narcotics Team" because his failure to identify them earlier was "clearly due to his lack of knowledge of their names rather than due to factual or legal mistake"); *Daniels v. Loizzo,* 174 F.R.D. 295, 300 (S.D.N.Y.1997) (noting that attempt to supply names would not be allowed where the amendment would only correct plaintiff's lack of knowledge, not a mistake); *Steiner v. City of New York,* 920 F.Supp. 333, 341–42 (E.D.N.Y.1996).

■ Plaintiff's reliance on the "continuing violation" or "continuing harm" rule is misplaced. Plaintiff does not allege that defendants continued to be involved with his medical care after March or April 1997. Having failed to allege any conduct by defendants that would fall within the timely filing period, the rule does not save his claims. *Pino v. Ryan,* 49 F.3d 51, 54 (2d Cir.1995) (to assert a continuous violation, plaintiff must allege that defendants violated his constitutional rights during the filing period); *Verley v. Goord,* No. 02 Civ. 1182, 2004 WL 526740, *7 (S.D.N.Y. Jan. 23, 2004) (dismissing as untimely claims for deliberate indifference of serious medical needs where defendants' involvement consisted of isolated acts that occurred over three years before the complaint was filed).

■ Moreover, plaintiff's motion to amend to add deliberate indifference claims is denied for the additional reason that plaintiff engaged in undue delay. In his original complaint, plaintiff made only a fleeting reference to a claim for the "denial of medical attention." (Dkt. # 1, p. 5). As a result, upon initial review of the *pro se* complaint pursuant to 28 U.S.C.

§ 1915A, Judge John T. Elfvin of this Court held that plaintiff had not alleged a deliberate indifference claim. (Dkt. # 5). He then granted plaintiff an opportunity to amend his complaint to set forth with particularity his Eighth Amendment claims for deliberate indifference to medical needs. (Dkt.# 3). Plaintiff, however, explicitly declined to do so, informing the Court that he was not pursuing medical claims. (*See* Dkts. ## 6, 7). He thereafter filed a first amended complaint that did not include deliberate indifference claims. (Dkts. ## 13, 14). More than a year after he abandoned these claims, plaintiff now apparently has changed his mind. (Dkt.# 18, p. 9, n. 1). That request is denied. Plaintiff has not offered any legitimate basis for the undue delay, and defendants would suffer prejudice.

Plaintiff's motion to amend to add the first and third claims based on defendants' alleged indifference to his medical needs in March and April 1997 is denied, as those claims are untimely.

### III. Second Claim—Retaliatory Assault on March 24, 1997

▇▇ Plaintiff's proposed second amended claim alleges that defendants Brun, Brzezniak, Pirrami, and Cunningham (and now, according to plaintiff, defendant Golden), violated his constitutional rights by assaulting him on March 24, 1997 in retaliation for his filing grievances against other correctional officers. By Decision and Order dated March 31, 2005, I previously

granted summary judgment in favor of defendants Brun, Brzezniak, Pirrami, and Cunningham based on collateral estoppel, in light of the prior Court of Claims action, and dismissed the claim with prejudice. (Dkt.# 44). Plaintiff cannot amend his complaint, therefore, to assert this claim again.[4]

### IV. Fourth Claim—Failure-to-Protect

Plaintiff styles his proposed fourth amended claim as one for "breach of duty to protect" against defendants Kelly, McCray, Cunningham, O'Connell, Laskowski, Struebel, and Eagen. The allegations set forth in the fourth claim, however, are the same allegations plaintiff asserts in his first, second, and third claims against defendants. For the same reasons I denied plaintiff's motion to amend to add these claims, *supra,* I deny plaintiff's motion to amend to add the fourth claim.

### V. Fifth and Ninth Claims—Inadequate Processing of Grievances

Plaintiff alleges that defendants Struebel, Eagen, Reams, and Stinson violated his First Amendment rights by failing to file and process various grievances and appeals in accordance with the Inmate Grievance Program at Attica and Great Meadow. These allegations fail to state a claim upon which relief can be granted.

▇▇ The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances. *See*

---

4. That plaintiff casts this claim as one for "retaliation" for filing grievances and not "excessive force" is of no consequence. There is an identity of issue between the Court of Claims action and this claim that was necessarily decided in defendants' favor. A judgment in favor of plaintiff on this claim would impair the finding of Judge NeMoyer that no unreasonable force was applied by defendants during the attack. *See* Dkt. # 44

and cases cited therein; *see also Collard v. Incorporated Village of Flower Hill,* 604 F.Supp. 1318, 1323 (E.D.N.Y.1984), *aff'd,* 759 F.2d 205 (2d Cir.1985) (the "[b]asis of establishing an identity of issues is broader and more practical" than requiring "[a] showing that the issue in the prior action was framed in the same language or that the same theory of liability was charged as in the subsequent action.").

*Bill Johnson's Rest., Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). However, inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim. *Cancel v. Goord,* No. 00 Civ.2042, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001). If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim. *See Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991). "Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." *Cancel,* 2001 WL 303713, at *3; *see also Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003); *Mahotep v. DeLuca,* 3 F.Supp.2d 385, 390 (W.D.N.Y.1998). Plaintiff's motion to amend to add the fifth and ninth claims is denied.[5]

## VI. Sixth Claim—Denial of Due Process During March/April 1997 Disciplinary Hearing

█ Plaintiff's sixth proposed amended claim asserts that Hearing Officer James Lambert violated his due process rights during the disciplinary hearing concerning the March 24, 1997 incident. Plaintiff further alleges that Director of Special Housing Unit ("SHU") Inmate Disciplinary Program Donald Selsky violated his Fourteenth Amendment rights by refusing to overturn Officer Lambert's findings of

guilt, despite the alleged due process violations.[6]

After a Tier III disciplinary hearing, Officer Lambert found plaintiff guilty of, *inter alia,* assault on correctional staff, and sentenced him to twelve months SHU time, twelve months of loss of privileges, and six months recommended loss of good time credit. (Dkt.# 24, Ex. A, pp. 86–87). Plaintiff filed an administrative appeal with defendant Selsky, who affirmed the findings of guilt but modified the sentence for SHU confinement and loss of privileges from twelve months to nine months. Selsky affirmed the loss of good time penalty. (*See* Ex. B, Pl. Appendix A–4).

I agree with defendants that this claim is barred by the favorable termination requirement of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). This rule precludes a § 1983 action based on alleged procedural defects during an inmate's disciplinary hearing (or on appeal), where the sanction imposed could affect credits toward release based on good-time served, unless the inmate has succeeded in obtaining a favorable result in state court (or through federal habeas relief) in challenging the administrative findings. *See Muhammad v. Close,* 540 U.S. 749, 751, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004) ("where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities

---

5. Moreover, plaintiff's fifth claim is untimely, as it concerns conduct that occurred in 1997, and plaintiff has failed to show that it relates back to the original complaint.

6. Contrary to defendants' argument, this claim is timely. The Court granted plaintiff additional time to allege a due process claim

against the appropriate defendants in connection with the March/April 1997 disciplinary hearing. (Dkt.# 7). In his first amended complaint (Dkt.# 13), plaintiff asserted due process claims against the hearing officer and Selsky. The Court accepted this amended complaint (Dkt.# 15).

to challenge the underlying conviction or sentence.").

A decision in favor of plaintiff on his alleged due process claim would necessarily call into question the validity of the loss of good-time penalty and could affect the overall length of his confinement. *See Alexander v. Selsky,* No. 02–CV–0589, 2004 WL 941803 (W.D.N.Y. Mar. 24, 2004); *McNAir v. Sgt. Jones,* 01 Civ. 3253, 2003 WL 22097730 (S.D.N.Y. Sept. 10, 2003); *Hyman v. C. Holder,* 96 Civ. 7748, 2001 WL 262665 (S.D.N.Y. Mar. 15, 2001); *Gomez v. Kaplan,* No. 94 Civ. 3292, 2000 WL 1458804 (S.D.N.Y. Sept. 29, 2000). Plaintiff has not succeeded in state court in overturning the determination of the disciplinary hearing. Although he filed an Article 78 proceeding challenging the disciplinary determination, his petition was dismissed as untimely. The dismissal was upheld on appeal. (Dkt.# 18, Ex. 2). Having failed to have obtained a favorable termination, then, plaintiff may not amend his complaint to add a due process claim regarding the hearing.

## VII. Seventh Claim—Denial–of–Access–to–Court Claim at Great Meadow

■ Plaintiff's seventh proposed amended claim concerns the fact that his Article 78 proceeding regarding the March/April 1997 disciplinary hearing was dismissed as untimely. Plaintiff asserts that Great Meadow Superintendent James Stinson and Great Meadow's Law Library Administrator (identified only as "John Doe # 1") created policies and practices regarding access to legal materials, legal assistance, and the law library that violated his right of access to the courts. The claim as asserted against defendant Stinson may go forward as pleaded because it

relates back to the claims alleged in plaintiff's original and first amended complaints.[7]

Plaintiff may not, however, add "John Doe # 1" as a new party because the statute of limitations has expired. The conduct about which plaintiff complains regarding access to the law library all occurred in 1997, which is more than three years before plaintiff sought to add John Doe # 1. Further, plaintiff has not shown that the law library administrator received notice of the claim against him or that there was a mistake in identity that prevented plaintiff from naming him earlier. *See Soto,* 80 F.3d at 35; *Barrow,* 66 F.3d at 468–69. Therefore, plaintiff may not amend his complaint to add John Doe # 1 ("Law Library Administrator") as a party.

## VIII. Eighth Claim—Deliberate Indifference to Serious Medical Needs at Great Meadow

Plaintiff seeks to add a claim against Dr. Polano for failing to provide adequate and timely treatment for his serious medical needs once he arrived at Great Meadow in April 1997. Plaintiff's claim concerns actions by Dr. Polano that occurred in 1997. Therefore, the claim is untimely. For the same reasons set forth in part II., *supra,* I find that the claim does not relate back to the original complaint. Plaintiff alleges in only conclusory fashion that the claim relates back, but he offers no explanation whatsoever as to why Dr. Polano was not sued as part of the original complaint.

■ In addition, I agree with defendants that allowing amendment to add this claim would be futile because plaintiff fails to state a claim upon which relief can be granted. Plaintiff describes nothing more than a disagreement as to the manner of

---

**7.** Although events underlying this claim occurred at a prison located in the Northern District of New York, I deny defendants' request to transfer the claim there.

treatment that he received. Such allegations do not state a constitutional violation. *See Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998); *Rosales v. Coughlin,* 10 F.Supp.2d 261, 264 (W.D.N.Y.1998). Further, to establish deliberate indifference plaintiff must prove that Dr. Polano had a culpable state of mind and intended wantonly to inflict pain on him. *See Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Plaintiff's proposed claim, however, makes no allegation that Dr. Polano acted with anything more than negligence, which is insufficient to state a constitutional claim. *Estelle v. Gamble,* 429 U.S. 97, 106 and n. 14, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Rosales,* 10 F.Supp.2d at 264. Therefore, plaintiff's motion to amend to add the proposed eighth claim is denied.

## IX. Tenth Claim—Inadequate Mail Facilities at Green Haven Correctional Facility

Plaintiff alleges that defendants Greiner, Maldanado, Renihan, Alexis, Eagen, John Doe #2, and Jane Doe #3 violated his First Amendment right of access to the courts in September and October 2000. Plaintiff claims that he mailed an amended complaint with supporting papers to this Court through the bulk mail procedures at Green Haven. He alleges that defendants John Doe #2 and Jane Doe #3 tampered with his papers before mailing them out and as a result, the Court rejected them for filing. Plaintiff also claims that defendants Greiner, Maldanado and Renihan created or enforced bulk mail procedures at Green Haven which violated his right to confidentiality.[8]

■ Plaintiff's motion to amend to add this claim is denied because it is subject to

dismissal pursuant to Fed.R.Civ.P. 12(b)(6). As the District Court held in *Cancel, supra,* at *4:

> Prisoners have a First Amendment right of access to the courts, and where there is a deliberate and malicious interference with that right they may seek redress from the court. *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir. 1986). To state a valid § 1983 claim for denial of access to the courts due to interference with an inmate's legal mail, an inmate must allege that a defendant's deliberate and malicious interference actually impeded his access to the court or prejudiced an existing action. *Lewis v. Casey,* 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Therefore, in order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim. *Id.* at 351, 116 S.Ct. 2174. In other words "the plaintiff must show that a 'non-frivolous legal claim had been frustrated or was being impeded' due to the actions of prison officials." *Warburton v. Underwood,* 2 F.Supp.2d 306, 312 (W.D.N.Y.1998) (*quoting Lewis,* 518 U.S. at 353, 116 S.Ct. 2174); *see also Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir.1997).

■ Plaintiff's claim fails here because he cannot show that he suffered an actual injury as a result of defendants' alleged conduct. It is undisputed that, although the Court initially rejected plaintiff's filing, it later accepted his first amended complaint and the voluminous documents submitted

---

8. Plaintiff asserts that defendants Maldanado, Alexis and Eagen failed to process his grievances regarding the bulk mail policies. Such claims are insufficient for the same reasons articulated in part V., *supra.*

in support thereof. The Court deemed those papers timely filed, despite the original confusion as to their relevance. (*See* Court's Order at Dkt. #20). Plaintiff, therefore, cannot show that defendants' conduct had any impact whatsoever on his pending legal action. *See Arce v. Walker,* 58 F.Supp.2d 39, 44–45 (W.D.N.Y.1999).

## X. Eleventh Claim—Supervisory Officials' Failure to Protect Plaintiff from November 28, 2000 Assault at Attica

I previously allowed plaintiff to supplement his original complaint to add claims regarding a second incident at Attica. FED.R.CIV.P. 15(d). In his supplemental complaint, plaintiff claims that on November 28, 2000, as he was being prepared to be transported out of Attica, defendant Brzezniak assaulted him a second time in retaliation for the lawsuits plaintiff filed against him. At the time of the assault, plaintiff was being housed at Attica during his trial before the Court of Claims. That action concerned the conduct of certain Attica personnel, including defendant Brzezniak.

Plaintiff's supplemental complaint also asserts a failure-to-protect claim against Sgt. Simmons based on the fact that Simmons allegedly failed to take measures to protect plaintiff from the retaliatory assault by the Attica personnel involved in the Court of Claims trial after plaintiff filed grievances expressing concern about possible retaliation. In addition, plaintiff claims that Simmons, who allegedly was present during the November 28, 2000 assault, failed to intervene to stop defendants from beating him. (*See* Dkt. ##14, 15). These claims are proceeding against Brzezniak and Simmons as part of the original complaint.

Plaintiff now seeks to add failure-to-protect claims against ten other defendants (Court of Claims Judge NeMoyer, Attorney General Eliot Spitzer, former Assistant Attorney General Sean Gleason, DOCS Commissioner Goord, Deputy Commissioner LeClaire, Superintendent Herbert, IGRC Supervisors Struebel and Caryl, and Classification and Movement Officers Carver and Smith), based on their failure to take action to protect him from the November 28, 2000 assault. Plaintiff claims he repeatedly wrote letters or filed complaints and grievances with defendants between November 19–26, 2000, about being housed in the same facility and cell block where the defendants who were involved in the ongoing trial worked. In these letters, plaintiff requested that he be transferred immediately out of Attica or that an order of protection be issued on behalf of plaintiff against, *inter alia,* defendant Brzezniak. Plaintiff claims that his complaints were ignored by defendants or that those defendants that did investigate his complaints failed to take corrective action to protect him.

Plaintiff makes no allegation that any of these defendants were personally involved in the assault. Rather, liability is predicated solely on the defendants' alleged prior knowledge of a substantial risk of serious harm to plaintiff and defendants' failure to take corrective action.

It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). Plaintiff must allege a "tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). However, the doctrine of *respondeat superior* is not applicable to § 1983 actions brought against prison officials. *Monell v. Dep't of Social Serv. of New York,* 436 U.S.

658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Bass,* 790 F.2d at 263. Thus, the mere fact that a defendant may have been in a "high position of authority is an insufficient basis for the imposition of personal liability" under § 1983. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977); *see also Wright,* 21 F.3d at 501.

Nevertheless, there are a number of ways in which a defendant in a supervisory position may be found personally involved in, and therefore liable for, constitutional violations, including: (1) direct participation, (2) failure to remedy a wrong after learning of it, (3) creation or tolerance of a policy under which unconstitutional practices occurred or were allowed to continue, or (4) gross negligence in managing subordinates who committed the violations. *Wright,* 21 F.3d at 501 (citations omitted); *Doyle v. Coombe,* 976 F.Supp. 183, 191–192 (W.D.N.Y.1997), *aff'd* 159 F.3d 1346, 1998 WL 537066 (2d Cir.1998).

■ Plaintiff alleges that during the trial on November 17, 2000, he requested that Court of Claims Judge NeMoyer issue an order that he be transported out of Attica before he became the victim of retaliation. Judge NeMoyer declined to do so. Plaintiff may not assert a failure to protect claim against Judge NeMoyer. Any such claim is barred by absolute immunity. *See Oliva v. Heller,* 839 F.2d 37, 39 (2d Cir.1988) ("Judges are granted absolute immunity from liability for acts taken pursuant to their judicial power and authority").

■ Likewise, the claims against Attorney General Eliot Spitzer and former Assistant Attorney General Sean Gleason are barred by Eleventh Amendment immunity. "[N]either a State nor its officials acting in their official capacities are 'persons' under [42 U.S.C.] § 1983." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

Therefore, state officials cannot be sued in their official capacities for retrospective relief under § 1983. *See id.* As such, plaintiff may not amend his complaint to assert claims against Spitzer or Gleason. *See Petreykov v. Vacco,* 159 F.3d 1347, 1998 WL 536755 (2d Cir.1998) (dismissing claim against Attorney General in his official capacity based on Eleventh Amendment immunity).

■ In any event, plaintiff's sole complaint against Spitzer and Gleason is that they ignored letters he allegedly wrote to them in which he expressed fear of retaliation at Attica and requested to be transferred. "However, the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement. *See Gayle v. Lucas,* No. 97 Civ. 0883, 1998 WL 148416, at *4 (S.D.N.Y. Mar. 30, 1998); *Higgins v. Coombe,* No. 95 Civ. 8696, 1997 WL 328623, at *11 (S.D.N.Y. June 16, 1997)." *Thomas v. Coombe,* No. 95 Civ. 10342, 1998 WL 391143, *5 (S.D.N.Y. July 13, 1998). Therefore, plaintiff may not amend to bring failure-to-protect claims against defendants Spitzer and Gleason since neither were personally involved in the alleged constitutional violations.

As for the proposed amended claims against Commissioner Goord, Deputy Commissioner LeClaire, Superintendent Hebert, and IGRC Supervisors Struebel and Caryl, and Classification and Movement Officers Carver and Smith, the plaintiff may amend his complaint to assert claims for failing to protect him. Although I have grave doubts that plaintiff ultimately will prevail against these defendants, I cannot say that plaintiff may prove no set of circumstances entitling him to relief. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

■ Allegations that a supervisory official had notice of a problem before the

fact and failed to remedy it are sufficient allegations of personal involvement to withstand a motion to dismiss. *See, e.g., Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir.1985). Further, allegations that a supervisory official was grossly negligent in managing subordinates who committed unconstitutional violations are sufficient to state a claim. *Wright,* 21 F.3d at 501. Here, it is unclear from the record when or even whether certain defendants received plaintiff's alleged complaints before the assault. Furthermore, the record is not developed regarding whether certain defendants had the authority to determine, either at the outset or after the fact, where plaintiff was to be housed during the Court of Claims trial.

At this juncture, the Court must accept as true plaintiff's allegations and construe his *pro se* pleadings broadly to raise the strongest arguments that they suggest. It cannot be said as a matter of law that plaintiff fails to state a claim upon which relief can be granted. *Chance,* 143 F.3d at 701. Issues concerning defendants' supervisory liability, their entitlement to qualified immunity, and their authority to make decisions regarding housing assignments should be addressed in the context of a motion for summary judgment that is based on fully developed record, including affidavits from defendants.[9]

The amended failure-to-protect and failure-to-intervene claims against defendant Simmons may also go forward as alleged, as this claim was already asserted in plain-

tiff's supplemental complaint. (*See* Dkts. ## 14 and 15).

## XI. Twelfth Claim—Retaliatory Assault on November 28, 2000

I allowed plaintiff to supplement his complaint to add a claim for retaliatory assault against defendant Brzezniak in connection with the November 28, 2000 incident. In that supplemental complaint, plaintiff made reference to "several other officers" involved in the attack, but did not identify those officers by name. (Dkt.# 14, p. 4). Plaintiff seeks to amend his complaint to add First and Eighth Amendment claims against defendants Franklin, Blenker, Kolack, Simmons, Turello, Balcer, and Pixley for their alleged involvement in the retaliatory assault or their failure to intervene to stop it. The claim is timely and defendants raise no legitimate reason why the amendment should not be allowed. Therefore, plaintiff may amend his complaint to add a claim against these defendants as well as defendant Brzezniak.

## XII. Thirteenth Claim—Denial of Due Process During December 2000 Disciplinary Hearing

▮ Plaintiff's thirteenth proposed amended claim asserts that Hearing Officer William Totten violated his due process rights in the December 2000 disciplinary hearing that grew out of the November 2000 incident at Attica. Plaintiff also alleges that Selsky violated his constitutional rights by denying his appeal based on the alleged due process violations.[10]

---

9. Plaintiff's proposed eleventh claims also seeks to add a due process claim against defendant Correctional Officer Walker. That motion is denied. Plaintiff claims that Walker opened plaintiff's "draft bag" or allowed it to be opened without permission, resulting in the loss or destruction of his legal papers in violation of his Fourteenth Amendment due process rights. Plaintiff fails to allege how he

suffered any actual injury as a result of the alleged tampering with his legal papers. *See Moore v. Gardner,* 199 F.Supp.2d 17, 27 (W.D.N.Y.2002) (plaintiff must show that a non-frivolous legal claim had been frustrated or impeded due to the actions of prison officials). Therefore, this claim fails.

10. Because the sentence imposed for the violations following this hearing did *not* include

■ Plaintiff's motion to amend to add this claim is denied because the amendment would be futile. The Court has before it a sufficient record on which to determine that plaintiff was afforded all the process that he was due at the hearing. It is well-settled that inmates subject to disciplinary hearings are entitled to the following due process protections: (1) advance written notice of the charges against him, (2) the opportunity to call witnesses and present documentary evidence in his defense and (3) a written statement of the evidence relied upon and the reasons for the disciplinary action. *Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

There is no dispute that the first and third requirements were satisfied here. Plaintiff alleges, however, that he was denied due process at the hearing because: (1) it was not conducted within the time frames set forth in DOCS's regulations; (2) Totten failed to make a reasonable inquiry into why two inmate witnesses refused to testify about the incident; and (3) Totten was biased.[11]

■ Plaintiff's contention regarding the time frame of the hearing does not raise a constitutional claim. Plaintiff argues that the hearing did not occur until his ninth day of SHU confinement, which is in violation of New York State regulations that require hearings be held within seven days of confinement. *See* 7 N.Y.C.R.R. § 251–5.1(a). However, "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir.1990). Those standards require only that the hearing be held within a "reasonable time" and not within any number of days. "What is considered a 'reasonable time' will depend upon the particular situation being examined." *Id.*

■ Plaintiff's hearing began nine days after he began SHU confinement, which is within the time period courts have held to be reasonable. *Russell v. Coughlin,* 774 F.Supp. 189, 197 (S.D.N.Y.1991) (eleven day delay not unreasonable where defendants provided reasons); *Bolanos v. Coughlin,* No. 91 Civ. 5330, 1993 WL 762112, *15 (S.D.N.Y. Oct. 15, 1993) (eight day delay). It appears that one reason for the delay was plaintiff's transport from Attica to Green Haven after the incident and before the hearing. Such minor delays do not rise to the level of a constitutional violation of plaintiff's due process rights.[12]

---

recommended loss of good time, the favorable termination rule set forth in *Heck* does not apply.

11. Plaintiff's complaint does not allege all the specific bases for his due process claim. Instead, due to what he referred to as "time restraints," he directed the Court's attention to "each and every other ground and/or objection made during the hearing or on appeal . . . ," as set forth in the various appendices. This is not an acceptable manner in which to plead a claim. The Court has no obligation to search numerous documents and transcripts to attempt to unearth a claim. Plaintiff's administrative appeal brief is 50 pages in length and raises numerous issues. The hearing transcript covers five days of hearings and exceeds 150 pages. Nevertheless, the Court has reviewed both. The majority of plaintiff's alleged due process "violations" are completely without merit. Only those allegations that potentially raised colorable due process issues are addressed herein.

12. Further, although the hearing was not concluded within fourteen days, the Commissioner granted Totten extensions of time to complete it. (See Appendix A–13, "System Inbasket Printout dated 12–19–00"). It appears Totten had legitimate reasons to adjourn the hearing: so that plaintiff could have access to his legal papers that were in transit from Attica; so that Totten could obtain a videotape taken after the incident; and so that the parties could identify the names of two in-

Next, plaintiff argues that his due process rights were violated when Totten failed to speak with two inmate witnesses personally to inquire into their reasons for refusing to testify at the hearing. The record shows that based upon information provided by plaintiff, Totten was able to identify the two inmates that plaintiff requested as witnesses. Both inmates, however, executed written witness refusal forms and checked the preprinted section of the form indicating, "I do not want to be involved." In the space provided for an explanation, one inmate wrote "don't know him" and the other inmate wrote, "Refuse—do not know." Plaintiff argues that, although he was given written reasons as to why the witnesses refused to testify, the reasons were vague and required further inquiry.

Plaintiff has failed to state a cognizable constitutional claim. An inmate in a disciplinary hearing does not enjoy the same right to call and confront witnesses as a he would in a criminal trial. The right is qualified and a hearing officer may preclude plaintiff from calling a witness if to do so would impinge on legitimate correctional goals or if there is a lack of necessity for calling the witness, for instance where the testimony would be cumulative or if the witness refuses to testify. *See Wolff,* 418 U.S. at 567, 94 S.Ct. 2963; *Walker v. McClellan,* 126 F.3d 127, 130 (2d Cir.1997). The Second Circuit has recognized that "if a witness will not testify if called, it cannot be a 'necessity' to call him." *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993). This same reasoning applies here.

Plaintiff has no colorable constitutional claim based on Totten's failure to call the witnesses or inquire about their refusal to

testify. Plaintiff admitted at the hearing that the witnesses did not know plaintiff and did not want to get involved, thus providing support for their offered reason for not testifying. Totten acted well within his discretion when he decided not to call two witnesses who did not know plaintiff and were unwilling to testify on his behalf. *See Wolff,* 418 U.S. at 566, 94 S.Ct. 2963 ("Prison officials must have the necessary discretion to ... refuse to call witnesses that may create a risk of reprisal...."); *Silva,* 992 F.2d at 22 ("if a prison official, presiding over a prison disciplinary hearing, reasonably concludes that it would be futile to call a witness to testify, his refusal will not constitute a violation of the prisoner's constitutional rights."). Furthermore, Totten had no authority to compel the inmate witnesses' testimony. Totten, who put these reasons on the record at the hearing, was not required to make any further inquiry. *Brown v. Selsky,* No. 93–CV–0268E(H), 1995 WL 13263, *6 (W.D.N.Y.1995) ("because such inmates refused to testify and could not be compelled to do so, and in that the plaintiff was given documentation stating same, to require more of the defendants would be futile and wasteful.").

Plaintiff next claims that he was denied due process because Totten was biased. There is no support in the record for this claim. An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer, *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996), and there must be "some evidence to support the findings made in the disciplinary hearing." *Superintendent v. Hill,* 472 U.S. 445, 457, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *see also Patterson v. Coughlin,* 905 F.2d 564, 569–70 (2d Cir.1990). Moreover, "[i]t is

mate witnesses at Attica. (*See* Dkt. # 24, Ex B. at 12/7/00, p. 40; 12/13/00, p. 2; 12/18/00 p. 2).

well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen,* 100 F.3d at 259. Rather, the standard set forth in *Wolff,* 418 U.S. at 571, 94 S.Ct. 2963, requires that the hearing officer not be so insufficiently impartial as to present a "hazard of arbitrary decisionmaking."

There is no evidence that Totten prejudged the evidence at plaintiff's hearing. Additionally, plaintiff asserts in conclusory fashion that the "evidence" of Totten's alleged bias. I have reviewed the transcript of the hearing and I find no evidence there of Totten's alleged bias. Moreover, there is sufficient evidence to support Totten's decision finding plaintiff guilty on five of the six charges. *Hill,* 472 U.S. at 457, 105 S.Ct. 2768 (due process merely requires that a decision in an inmate disciplinary hearing be supported by "some evidence"). Because I find that plaintiff's due process rights were not violated during the hearing, his motion to amend to add claims against Totten and Selsky are denied.

### XIII. Fourteenth Claim—Deliberate Indifference to Serious Medical Needs at Green Haven

Plaintiff's fourteenth proposed amended claim alleges that defendants Sgt. Simmons, Dr. Koenigsman, Superintendent Greiner, and Deputy Superintendent Perlman were deliberately indifferent to plaintiff's serious medical needs following the November 28, 2000 incident at Attica.

 In order to establish a deliberate indifference claim, "the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (citations omitted).[13] Second, the defendant "must act with a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. Courts give prison officials broad discretion in determining the type and extent of medical treatment given to inmates. *Thomas v. Pate,* 493 F.2d 151, 157 (7th Cir.1974). A "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.* (citation omitted).

 Plaintiff asserts that as a result of the November 2000 incident with Brzezniak he suffered injuries to his shoulder, ankle, genitals, head, and back. He claims that, immediately after the incident, Sgt. Simmons violated his Eighth Amendment rights by refusing to allow the medical staff to remove his handcuffs during examination. These allegations are insufficient as a matter of law to state a claim upon which relief can be granted for deliberate indifference to serious medical needs. Plaintiff does not allege that Simmons prevented him from being examined by the medical staff and he fails to allege how the presence of hand restraints hampered the examination and treatment. He does not allege that he suffered a sufficiently serious injury as a result. I find that no rationale juror could find that Simmons's decision posed an excessive risk to plaintiff's health or safety.

---

13. A medical need is "serious" for constitutional purposes if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway,* 37 F.3d at 66). Among the relevant factors are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992)).

In addition, the proposed claims against Dr. Koenigsman, Superintendent Greiner, and Deputy Superintendent Perlman also fail. In the record before the Court are copies of plaintiff's medical records from this time period, as well as grievances and complaints plaintiff filed regarding this claim. (Pl. Appendix A–15). The records show that plaintiff's claim amounts to nothing more than a disagreement over the course of treatment. For instance, his complaints concern the fact that an appointment with a physician was rescheduled due to a conflict, that he was not receiving adequate over-the-counter medications, and that he was overdue for physical therapy. (Pl. Appendix A–15). This is insufficient to state a deliberate indifference claim. *Rosales,* 10 F.Supp.2d at 264.

Furthermore, this is not a case in which prison officials intentionally ignored very serious medical conditions for months that went unremedied. In fact, the record shows that plaintiff was regularly seen by health care providers, received medication, attended a prosthetics clinic, and saw a specialist. (Pl. Appendix A–15). That plaintiff feels he was entitled to more prompt care or different treatment is of no consequence. In any event, even if these defendants were negligent in their treatment or response to plaintiff's grievances about treatment, that is not enough to sustain a claim under § 1983 for deliberate indifference. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998); *Thomas,* 493 F.2d at 157.

Likewise, plaintiff's claim against Superintendent Greiner and Deputy Superintendent Perlman must fail because they lack sufficient personal involvement to be liable under § 1983. The only action either Greiner or Perlman took was to forward plaintiff's complaints about his medical care to the appropriate officials (including Dr. Koenigsman) for follow-up. It is well-settled that "[w]here a supervisor's involvement in a prisoner's complaint is limited to forwarding of correspondence to appropriate staff, the supervisor has insufficient personal involvement to sustain a § 1983 cause of action." *Liner v. Goord,* 310 F.Supp.2d 550, 555 (W.D.N.Y.2004); *see also Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (summary judgment affirmed where commissioner referred plaintiff's letter to the prison superintendent); *Garvin v. Goord,* 212 F.Supp.2d 123, 126 (W.D.N.Y.2002) (granting summary judgment to DOCS Commissioner based on lack of personal involvement). Therefore, his motion to amend to add a deliberate indifference claim against defendants at Green Haven is denied.

## XIV. Fifteenth Claim—Denial of Due Process

Plaintiff alleges that defendants Deputy Commissioner LeClaire, Lieutenant Pastwick, and Inspector General Malone violated his due process rights by "failing to conduct unbiased investigations into plaintiff's complaints and grievances." Plaintiff claims that his constitutional rights were violated because he received either a "one-sided response or no response at all" to his complaints that prison officials assaulted him in March 1997 and November 2000. He argues that defendants would never take the word of a prisoner over a correctional officer and that he faced a "Blue Wall of Silence."

These allegations fail to state a claim upon which relief can be granted. As discussed, *supra,* at parts V., VI., and XII., plaintiff cannot maintain a due process claim based on the investigations or disciplinary hearings that stemmed from the two alleged assaults. He has no constitutional right to have his grievances processed or investigated in any particular manner. *See Cancel,* 2001 WL 303713, at

*3. Further, plaintiff had two disciplinary hearings and a trial at the Court of Claims in connection with these incidents, all of which resulted in findings that plaintiff's complaints were meritless. He was afforded all the process that he was due. In any event, plaintiff does not allege how the investigations were deficient, just that they must have been based on their outcomes. Such overly broad, conclusory allegations do not state a cognizable constitutional claim under § 1983.

## CONCLUSION

Plaintiff's motion to amend his complaint (Dkt.# 18) is granted, in part, and denied, in part, as follows:

- Plaintiff's motion to amend with respect to the first, second, third, fourth, fifth, sixth, eighth, ninth, tenth, thirteenth, fourteenth, and fifteenth proposed amended claims is denied;

- Plaintiff's motion to amend with respect to the **seventh proposed amended claim** is granted, in part, and the claim against defendant **Stinson** regarding policies at Great Meadow may go forward as pleaded; plaintiff's motion to amend as it relates to the remainder of the seventh claim against defendant "John Doe # 1" is denied with prejudice;

- Plaintiff's motion to amend the **eleventh proposed amended claim** is granted, in part, and the failure-to-protect claims against defendants **Goord, LeClaire, Carver, Smith, Hebert, Caryl, Strubel and Simmons** regarding the November 28, 2000 incident at Attica may go forward as pleaded; plaintiff's motion to amend as it relates to the remainder of the eleventh claim against defendants Spitzer, Gleason, Walker and NeMoyer is denied with prejudice;

- Plaintiff's motion to amend the **twelfth proposed amended claim** is granted and the claims alleged against defendants **Brzezniak, Franklin, Blenker, Kolack, Simmons, Turello, Balcer, and Pixley** regarding the November 28, 2000 incident at Attica may go forward as pleaded.

- Plaintiff's second amended complaint shall consist of the seventh claim against Stinson, the eleventh claim against Goord, LeClaire, Carver, Smith, Hebert, Caryl, Strubel and Simmons, and the twelfth claim against Brzezniak, Franklin, Blenker, Kolack, Simmons, Turello, Balcer, and Pixley.

The Clerk of the Court is directed to cause the United States Marshal to serve copies of the Summons, Second Amended Complaint (Dkt. # 18), and a copy of this Order on defendants **Goord, LeClaire, Carver, Smith, Hebert, Caryl, Strubel, Simmons, Franklin, Blenker, Kolack, Turello, Balcer, and Pixley.**

The Clerk of the Court is directed to serve copies of the Summons, Second Amended Complaint (Dkt. # 18), and this Order upon defendants **Brzezniak and Stinson,** by mailing them to defendant's attorney of record

Defendants are directed to answer the Second Amended Complaint.

IT IS SO ORDERED.